WESTERN DIST.<br>*October*, 1836.<br><br>HAGAN ET AL.<br>*vs.*<br>SCOTT.

---

## HAGAN ET AL. *vs.* SCOTT.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, THE JUDGE THEREOF PRESIDING.

When the property of a partnership firm, is not more than sufficient to pay the partnership debts, no part of it can be legally applied to the payment of the *separate debts* of either of the partners.

Where a partner buys the undivided share of his co-partner, in a town lot, by assuming debts of his vendor to the full amount of its value, and paying them to his separate or individual creditors, it will be a valid payment against the claims of the creditors of the partnership.

The separate creditors of a partner, have a right to be paid out of his separate property, in preference to the claims of the creditors of the partnership, of which he is a member.

This is an action on a promissory note for three thousand dollars, executed by the firm of Calland & Scott, payable to Hagan & Co., the first of November, 1832, with ten per cent. interest per annum.

44

The petition charges that W. P. Scott had, since the maturity of the note, changed the firm into a new one, of W. P. & J. B. Scott. That in October, 1833, W. P. Scott, being in insolvent circumstances, sold all his interest in the stock of merchandize, of W. P. & J. B. Scott, together with all the debts due to said firm, to his co-partner, J. B. Scott, and also his undivided half of a lot of ground, in the town of Alexandria, with the improvements thereon.

The plaintiffs further allege, that the vendee, J. B. Scott, was not a creditor at the time of said sale, and that it was made on the part, both of the vendor and vendee, with a view to defraud the *bonâ fide* and just creditors of W. P. Scott, and without any just consideration.

The plaintiffs pray that said sales be annulled, and that all the property embraced therein, be seized and sold to satisfy their demand.

The defendants answered separately, and pleaded the general issue.

Upon these pleadings and issue, the cause was tried before a jury.

From the evidence it appeared, that on the 12th of October, 1833, the commercial partnership heretofore existing between W. P. & J. B. Scott, was dissolved on the following conditions and stipulations.

1. "W. P. Scott, sells to, and conveys to J. B. Scott, all his interest in said house, or partnership of W. P. & J. B. Scott, as well the stock in trade, both of merchandize, and every description of the property belonging thereto, including all debts due to the house by assumpsit, book accounts, notes, draft, or otherwise."

2. The said W. P. Scott, also sells his undivided half of a certain house and lot, in the town of Alexandria, to J. B. Scott.

3. The said W. P. Scott, releases all his claims on said house, or on the said J. B. Scott, for advances made to the same, or in any other way whatever.

4. In consideration of the above sale and release, and benefit by W. P. Scott, of all his interest in said firm as

above, to the said J. B. Scott, and of the sale of the right of W. P. Scott to the said house and lot, the said J. B. Scott binds himself to pay all the debts of the house of W. P. & J. B. Scott, and also several debts of W. P. Scott, as specified.

After Calland left the firm of Calland & Scott, the latter took in his brother J. B. Scott, and the new firm of W. P. & J. B. Scott commenced. It continued until dissolved, as stated above. W. P. Scott brought into this firm, from the old one of Calland & Scott, stock and merchandize estimated at twelve thousand dollars, and J. B. Scott put in five thousand dollars. Since the dissolution and sale from W. P. Scott to J. B. Scott, the latter has paid debts of the firm, amounting to twenty-eight thousand eight hundred and forty-four dollars; and assumed and paid debts of W. P. Scott, amounting 'to thirteen thousand five hundred and thirty-one dollars, making an aggregate of forty-two thousand three hundred and seventy-six dollars.

The stock of goods on hand at the dissolution of the firm of W. P. & J. B. Scott, amounted to seven thousand seven hundred and eighty-seven dollars. Debts due them, nineteen thousand and twenty-six dollars, in all twenty-six thousand eight hundred and fourteen dollars. This showed a balance of fifteen thousand five hundred and sixty-two dollars, which J. B. Scott had already paid over and above what he had received, both on account of the firm and private debts of W. P. Scott.

The jury returned a verdict for the plaintiffs against the defendants, J. B. Calland and W. P. Scott, for the amount of the note sued on; and discharged J. B. Scott. After an unsuccessful attempt to obtain a new trial, the plaintiffs appealed.

*Winn* and *Barry*, for the plaintiffs.

1. This is an action to set aside the sale of stock of merchandize, property and effects of the firm of W. P. & J. B. Scott, to the latter, as having been made when the vendor was in insolvent circumstances, which were known to the vendee. The sale is invalid and fraudulent as against

creditors, and the goods are liable to the plaintiffs' claim. It is clearly shown, that J. B. Scott knew the firm of Calland & Scott was insolvent at the time he joined his brother, whom he acknowledges ruined him. *Louisiana Code*, 1997. 4 *Martin, N. S.*, 649. 2 *Louisiana Reports*, 16. 2 *Martin, N. S.*, 64–5.

2. The goods of Calland & Scott, and of W. P. Scott, went into the partnership of W. P. & J. B. Scott, and which compose part of the sale sought to be annulled. W. P. Scott was bound to pay the debts of Calland & Scott; these goods are therefore bound for the plaintiffs' claim. 3 *Louisiana Reports*, 494.

*Hyams* and *Thomas*, for the defendant.

The gist of this action is alleged fraud in the seller and buyer, in regard to third persons and creditors. If there is none shown they cannot complain, and the creditors have sustained no injury. The evidence shows that the defendant has ruined himself in paying the debts of the late firm, and of W. P. Scott, to a much greater amount than the property which he received by the sale. He is not, therefore, responsible. *Louisiana Code*, 1973, 1977.

*Martin, J.*, delivered the opinion of the court.

This action was brought on a promissory note, executed by J. B. Calland and W. P. Scott, under the style and firm of Calland & Scott. This partnership terminated in the purchase of Calland's interest, by his partner, W. P. Scott, who afterwards formed a new partnership with J. B. Scott, in which he put the old stock of Calland & Scott; the new partner's share in the stock being relatively small. He afterwards purchased the interest of W. P. Scott, and his undivided half of a lot of ground.

The plaintiff seeks to make the new partner, J. B. Scott, liable with the makers of the note, on the ground that he was the purchaser of all the interest of W. P. Scott, in the said firm, including the old stock of goods of Calland & Scott, with a knowledge of the insolvency of W. P. Scott,

When the property of a partnership firm is not more than sufficient to pay the partnership debts, no part of it can be legally applied to the payment of the *separate debts* of

who thereby removed from the reach of his creditors, all the means he had for the payment of their claims. There was a verdict and judgment in favor of J. B. Scott, and against his co-defendants for the amount of the note sued on. The plaintiffs appealed.

The defendant, J. B. Scott, can only be made liable for the fraudulent purchase of the interest of his co-partner, W. P. Scott, in the firm, and of his undivided interest in the lot of ground. This is not shown by the evidence in the present case. As to the interest of W. P. Scott, in the partnership of W. P. & J. B. Scott, the testimony shows that the whole property of the firm did not exceed the amount of its debts; and therefore, no part of it could be legally applied to the discharge of any separate debts, of either of the partners. So far as regards W. P. Scott's interest in the undivided half of the lot of ground, it is shown that J. B. Scott assumed and paid debts of his vendor, to the full amount of the value of that share. These last debts were separate ones of W. P. Scott, and his separate creditors had a right to be paid out of his separate property, paramount to the claims of the creditors of any partnership, in which he had been concerned. 8 *Martin, N. S.*, 599.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

WESTERN DIST.
*October*, 1836.

HAGAN ET AL.
*vs.*
SCOTT.

either of the partners.

Where a partner buys the undivided share of his co-partner in a town lot, by assuming debts of his vendor to the full amount of its value, and paying them to his separate or individual creditors, it will be a valid payment against the claims of the creditors of the partnership.

The separate creditors of a partner have a right to be paid out of his separate property, in preference to the claims of the creditors of the partnership of which he is a member.