WESTERN DIS.
October, 1841.
───────────
MAURIN & CO.
vs.
ROUQUER ET AL.
back as to both the defendants, it is not necessary to enquire into the sufficiency of the notice of protest.

---

## MAURIN & CO. vs. ROUQUER ET AL.

APPEAL FROM THE COURT OF THE TENTH DISTRICT FOR THE PARISH OF NATCHITOCHES, THE JUDGE THEREOF PRESIDING.

A sale by the father to his son, not a creditor, *of his estate*, at a sound price, where there is no privity between the latter and the creditors of his father and none between the father and his creditors, *is valid*, although the father, was insolvent at the time, and the son agreed and did apply the *price* to the payment of *a portion* of the creditors: Nor is the mere relationship of the father and son, evidence of fraud.

The sale would be good as to the son, even if it was the intention of the father to defraud his creditors, because the contract of sale was onerous and the purchase made for the full value of the property.

Actions to annul a sale, brought by a complaining creditor, for giving an undue preference to a portion of the creditors of the common debtor, are prescribed by the lapse of one year from the date of the sale.

This is a revocatory action, to set aside a sale of *his estate* made by F. Rouquer, the father to J. B. O. Rouquer, his son, on the ground of undue preference given to some creditors over the plaintiffs, who are complaining creditors. They allege that on the 16th Jan., 1839, the father by public or notarial act made a sale of a plantation and slaves comprising all his estate to his son, who agreed and has actually paid from the price thereof, the de-

mands and debts of sundry creditors of his father in fraud of the rights of the petitioners. They show that they obtained a judgment against F. Rouquer in November, 1839, about ten months after this sale, for $10,000, and have not been paid and can find no property out of which to satisfy their judgment.

This suit was instituted the 24th October, 1840, nearly two years after said sale. The plaintiffs allege it is fraudulent and made in fraud of their rights, and they pray that it be annulled and the property made subject to their demand.

The defendants severed in their answers. Young Rouquer pleaded the general issue; averred that the sale was fair and just, for the full value of the property and that he had in accordance with the contract, assumed and paid debts of his vendor to the amount of $10,123; and has had the possession and entire control of the said estate as owner. Rouquer, the father, denied all fraud and averred the sale was fair and bona fide.

The creditors who had been paid were made parties and denied all fraud or any privity as to the sale between the father and son, or with either of them.

The plea of prescription of one year from the date of the sale *before suit*, was interposed.

On all the evidence adduced under these issues and pleadings, there was a verdict and judgment for the defendants. The plaintiffs appealed.

*Boyce & Dunn*, for the plaintiffs and appellants, contended that F. Rouquer was insolvent at the time of this sale, to the knowledge of his son; and the son in fact acted as agent of his father in the payment of a portion of the creditors; which was giving them an undue preference over the plaintiffs, who, were also creditors and have not been paid a cent. It is a fraudulent sale as respects the complaining creditors and null as to them.

*Roysden*, for the defendants, insisted the sale was valid. It was made to young Rouquer, who was not a creditor, and be-

fore the plaintiffs' had any judgment against the father.   It was fair and bona fide and there is no cause of nullity.

*Garland, J.* delivered the opinion of the court.

The petitioners represent that on the 22d day of November, 1839, they recovered a judgment against François Rouquer for $10,000, with interest and costs, that an execution issued on the same, which has been returned *nulla bona*.   That said Rouquer being insolvent, with a view to protect his property from his creditors, and particularly the plaintiffs, had by an authentic act sold and conveyed to his son and co-defendant, Jean B. O. Rouquer, an emancipated minor, the plantation on which he, François, resided, with the improvements and two slaves.   In which sale provision is made for the payment of certain preferred creditors, all of which is illegal, fraudulent and void.   That young Rouquer knew at the time of the sale, his father was insolvent, and purchased the property with a view to defraud them.   That since the purchase young Rouquer has paid the other creditors of his father, but will not pay petitioners, but keeps the property which is liable for this debt. The prayer is, that the sale made on the 16th day of January, 1839, of the land and slaves be annulled as fraudulent, and that the same be returned to the mass of the estate of F. Rouquer and made liable to the payment of his just debts.

The defendant, J. B. O. Rouquer, for answer denies any fraud.   He says he is not and never was a creditor of his father, that as a purchaser in good faith and for a valuable consideration, he bought the plantation and slaves for $16,000.   That in accordance with his contract he has paid various creditors of his father, $10,123, from which sum as a portion of the consideration of the sale, his said father has released him, and he has given up the evidence of those claims; he names the creditors he has paid and the respective amounts paid to each.

The act of sale, dated on the 16th January, 1839, declares that in consideration of $16,000. F. Rouquer sells and delivers to his son the tract of land mentioned with the farming utensils,

&c.; " ten thousand dollars whereof are to be applied to the <span style="float:right">WESTERN DIS.</span>
payment of debts due by the vendor at such times and on such <span style="float:right">*October*, 1841.</span>
terms as the purchaser shall agree upon with the creditors of <span style="float:right">MAURIN & CO.</span>
the vendor," and the balance to be paid the vendor in various <span style="float:right">*vs.*<br>ROUQUER ET AL.</span>
instalments.   The vendee is also to furnish the vendor with the
necessaries of life until the $10,000 is paid or settled, for which
he is to have credit.   J. B. O. Rouquer, at the same time sells
his father the undivided half of three slaves in part payment
of the tract of land, &c.   In this act no creditors are named or
any specific sums mentioned as due to any one, no creditor
signs the act or seems to have known any thing about it, except
one who was accidentally in the notary's office, but took no
part in the transaction.

On the same day, F. Rouquer also sold and conveyed by
public act to his son two slaves, for which he was to pay A.
Sompeyrac, tutor, &c., the price for which they had been sold
by him to the elder Rouquer, which was unpaid.   This price
and interest, it was ascertained afterwards, amounted to about
$3080.   This amount young Rouquer was to have credit for on
the price of the land, and it formed a part of the $10,123,
hereafter mentioned. To this contract Sompeyrac was no party.

After these contracts were made, young Rouquer went to
the different creditors of his father, and by payments or as-
sumption of his engagements, obtained from them the notes or
other evidence of debts they held, and took them to his father,
who, on the 13th day of August, 1839, went again before the
notary and passed another act acknowledging the receipt of
$10,123, and the vouchers for it, in part payment of the plan-
tation previously sold.   In this act the name of each creditor
is mentioned together with the sum paid.   On the same day
young Rouquer gave his father four notes for the balance of the
price of the land, to wit: $5877, payable in four annual instal-
ments.   This act was passed about three months before Mau-
rin & Co., obtained judgment against F. Rouquer on his
endorsements for Cortez, Laplace & Co.

At the time these acts were passed it was well known that

F. Roquer was in embarrassed circumstances. He estimated his individual debts at about $10,000, but they turned out to be several thousand dollars more. He had property to the amount of about twenty or twenty-two thousand dollars. If he could get clear of his endorsements to the plaintiffs for Cortez, Laplace & Co., for which suits were afterwards commenced, he would be solvent, if not he was clearly insolvent. The evidence to show that young Rouquer knew his father was insolvent is by no means clear, but it is certain he knew he was much embarrassed.

The plaintiffs obtained a judgment against F. Rouquer on the 22d of November, 1839, and it not being satisfied they commenced this suit on the 24th of October, 1840, more than twenty-one months after the sale from Rouquer to his son had been made, and about fifteen months after the latter had paid the creditors of the former and been discharged from so much of the price. The evidence shows the property sold for its full value and that young Rouquer has ever since had the sole management and control of it, though his father lives on the place being old and dependant on his son.

There was a mis-trial in the case in November, 1840, after which the plaintiffs amended their petition by leave of the court, and made all the creditors to whom young Rouquer had made payments on account of his father, parties to the suit; alleging they were aware of the insolvency of F. Rouquer on the 16th January, 1839, and that young Rouquer acted as *their agent* in making the purchase aforesaid, and that it was a conspiracy among all the parties to obtain an unjust preference over the plaintiffs. They therefore pray these creditors be cited, and copies of the original petition and amendment be served on them ; that the sale be annulled and each of these new defendants be compelled to return the amounts they have received and that they be paid *pro rata*. The service of this petition was acknowledged by or served on different parties at various dates from November 30th, 1840, to April 2d, 1841.

These defendants appeared and answered by a general de-

nial. They say, they had nothing to do with the sale ; that
young Rouquer had settled his father's debts with them. They
'deny all fraud or intention to obtain any unjust preference and
. they, with the original defendants, plead prescription to this
suit.

On the second trial a good deal of evidence was introduced
to show François Rouquer was insolvent at the time he exe-
cuted the act of sale, and as much was received to show he was
not insolvent, but only embarrassed. The result of it all is,
that including his endorsements in favor of the plaintiffs, there
is no doubt he was insolvent; if he should not be obliged to
pay those endorsements, then he was solvent. It is in evidence,
that at the time the plaintiffs had not commenced a suit against
him on his endorsements, but the notes had been protested.
Whilst the parties were at the notary's office for the purpose
of passing the act of sale, the elder Rouquer made an estimate
of his debts amounting to about ten thousand dollars and it is
further shown, that about that time, he had no serious appre-
hensions that he would suffer by his endorsements for Cortez,
Laplace & Co., as he relied on their assurances that their notes
endorsed by him would be discharged by them. To rebut this
the plaintiff offered evidence to show that at the time of the
sale Cortez, Laplace & Co. were notoriously insolvent, and
Rouquer could therefore not have had any sufficient reason to
believe they would or could pay their notes. To this the de-
fendants objected and the court refused to receive the testimony
to which the plaintiffs excepted. The court very probably
erred, but it is not material in this case, as we are of opinion
the evidence could not affect the judgment which has been
given.

All the debts of the elder Rouquer paid by his son were
established on the trial, and amount to the sum for which the
release was given, and no evidence was given to prove he
acted as the agent of the creditors.

There was a verdict and judgment for the defendants and
the plaintiffs appealed.

Actions to annul a sale, brought by a complaining creditor, for giving an undue preference to a portion of the creditors by the common debtor are prescribed by the lapse of one year from the date of the sale.

When this sale was passed in January, 1839, it is not shown there was any privity or agreement between young Rouquer and the creditors, or between the elder Rouquer and those persons. The son was not a creditor of the father and the mere relationship is not evidence of fraud; 9 Martin, 654; 1 Martin, N.S., 535. The sale must therefore be considered as one made in the ordinary course of business, not to a creditor and therefore good; La. Code, art. 1981; 6 La. Rep., 344; 12 Idem, 266; 16 Idem, 150. The contract would be good as to young Rouquer even if it was the intention of his father to defraud his creditors, as the contract was an onerous one and the purchase made for the full value of the property; La. Code, 1973-74-76; 10 La. Rep., 345, 348. The agreement on the part of young Rouquer to pay ten thousand dollars of the debts owing by his father and his actual discharge of them by payment or novation, and the giving his notes for the balance of the price, is a valid consideration for the sale; 6 La. Rep., 536. If the plaintiffs have been injured by these payments to, or arrangement with the creditors, they cannot annul the sale on that account; but if any thing is wrong they must call on the creditors themselves. This they seem to have become aware of, after the first attempt at a trial, and then by the amended answer, the former creditors are called into the suit, and the agency of young Rouquer alleged.

Supposing it to be as asserted but not proved, that young Rouquer was the agent of the creditors, we cannot see how the plaintiffs can resist the plea of prescription tendered by the defendants. The article 1982 of the La. Code, with the decisions of this court in 3 La. Rep., 26: 14 Idem, 321; settle that question. The only ground of nullity in this case, is that an undue preference has been given to a portion of the creditors of François Rouquer. Actions based on that ground alone come under the prescription contained in the article cited, and must be brought within a year from the date of the act sought to be revoked.

The judgment of the District Court is therefore affirmed with costs.