## No. 1239.

HIRSCH LOWENSTEIN & LEVI ET AL. VS. E. FUDICKAR ET AL.

SCHMIDT & ZEIGLER, GRAVELY & MILLER, YALE & BOWLING, IN LIQUIDATION, J. GROSSMAN VS. J. Y. COVINGTON ET AL.

OUACHITA NATIONAL BANK AND MERCHANTS AND FARMERS BANK, INTERVENORS.

### ON MOTION TO DISMISS.

An order of appeal granted in general terms on the joint and several motions of plaintiffs and intervenors in open court, will not be vitiated on account of the failure of the judge to specify, in the concluding portion thereof, the amount of intervenors' appeal bond. Intervenors having furnished bond in the amount fixed in the order of the court will suffice, notwithstanding the plaintiffs alone are mentioned.

### ON THE MERITS.

1. Notwithstanding a debtor illegally and fraudulently disposes of his goods to to the injury of his creditors, they can not be reached and recovered unless the purchaser is shown to have participated in the fraudulent design.

2. A sale made to one *not a creditor* must be considered as one in the ordinary course of business, if made for an adequate consideration, paid in cash or its equivalent; and the fact that a portion of the purchase price was subsequently applied to the discharge of the vendor's debt will not vitiate the sale as an onerous contract.

APPEAL from the Fifth District Court for the Parish of Ouachita Richardson, J.

D. M. *Sholars* for Plaintiffs and Appellants:

1. The property of the debtor is the common pledge of his creditors. C. C. 3183

Lowenstein & Levi et al. vs. Fudickar et al.

2. Every act done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property of such debtor, is illegal, and ought as respects such creditor be avoided. C. C. 1969.

3. Not only contracts which dispose of property, but all others which are made in fraud of creditors, and deprive them of their recourse to the property of their debtor, come within the provisions of this section. C. C. 1989.

4. A sale of an entire stock of goods and store fixtures for one-third of its value by an embarrassed debtor, in order to be able to protect certain of his indorsers, is a sale in fraud of the rights of his creditors within the meaning of Article 1970, C. C.

5. Such a sale can not be said to have been made in the usual course of the party's business. * * And the purchaser can not invoke the protection provided in Article 1986, C. C. It is only contracts made in the USUAL COURSE of the party's business, such as the ordinary daily sales of a retail merchant, that are exempt from revocation under the provisions of this article. 16 An. 402.

6. Insolvency of the debtor and knowledge thereof by the party with whom he contracts, not the sole ground upon which contracts can be annulled for fraud upon the rights of creditors. 36 An. 8; 35 An. 885; 34 An. 995; 24 An. 217; 11 L. 424; 16 L. 367, 1190; 6 An. 542; decision Second Circuit Court, 86-63.

7. If the circumstances attending the sale were such as to induce a prudent man to make further inquiry as to the insolvency of his vendor, knowledge on the part of the vendee will be presumed. 10 L. 370; 1 An. 43; 3 M. 564.

8. Positive proof of fraud and knowledge, as herein alleged, is difficult of direct proof, and for this reason great weight should be given to all the circumstances, and the relationship of the parties from which knowledge may be inferred. 2 R. 39; 4 L. 249.

9. If knowledge of the involved and embarrassed condition of the vendor is brought home to the vendee, at any time when it is possible for the vendee to retrace his steps, at any time when it is not too late for the vendee to restore property which the vendor has undertaken to place beyond the reach of his creditors, and yet he refuses to do so, he then becomes a party to the fraud. 11 R. 196.

10. When a sale is attacked and is met by a technical exception, an unwillingness to meet the issue thus disclosed, raises a presumption of fraud. 33 An. 1063.

11. The exclusion of certain testimony as being privileged under Article 2283, C. C., if intended to shield an attorney's client, which is doubtful, should not have prevailed in this case. In matters of simulation and fraud, the widest latitude is allowed in the introduction of testimony, and particularly when, as in this case, the attorney was practically a creditor of his client.

12. " We must exercise the discretion confided to us by the Code, and look through the apparent into the real transactions of the parties which are covered by but a thin veil." Bank of Mobile vs. Harris, 6 An. 815.

*Potts & Hudson* and *Boatner & Lamkin* for Defendant and Appellee:

1. A surety is not a creditor. 41 An. 229; 2. An 498; 13 An. 525; 3 How. 510; 5R. 449.

2. The securing an indorser, or surety, against eventual liability, by a transfer to him of collaterals, by the principal debtor, is not the giving in payment to a creditor, and is not forbidden by Article 2658, C. C.

Lowenstein & Levi et al. vs. Fudickar et al.

3. To annul a sale, by the revocatory action, the plaintiff must prove three things: (1) Fraud on the part of the vendor; (2) Knowledge on the part of the vendee; (3) Actual injury to creditors—the debtor's insolvency. 33 An. 428; 31 An. 196; 26 An. 567; 34 An. 883.

4. If the vendee be without fraud, and buy for a fair price, without knowledge of the vendor's insolvency, the sale should not be annulled. 34 An. 883; 26 An. 467; 31 An. 196; 9 La. 170.

5. The burden of proving fraud rests upon him who alleges it. It is not presumed, and must be proven. C. C. 1848; 39 An. 574; 34 An. 310.

6. Where plaintiff places the defendant on the stand as a witness, and probes his conscience by questions touching the facts of the cause, he represents such defendant as eminently worthy of belief, and the testimony thus obtained is of the highest character. 26 An. 693; 26 An. 594; 10 An. 470.

7. Such testimony, like that formerly obtained by interrogatories on facts and articles, obtained from defendant by interrogatories propounded by plaintiff and answered in open court, should not be divided, but taken as a whole. 3 N. S. 109; 4 La. 158.

8. If the contract be annulled, the purchaser should be reimbursed the amount that has proven an asset for the payment of the seller's debts. C. C. 1982; 12 L. 263; 11 Rob. 190.

9. If made to one not a creditor for a fair price, in the usual course of business, the sale will not be annulled, even though the purchaser knew of the insolvency. C. C. 1986; 24 An. 158; 7 An. 645; 12 L. 263; 19 L. 594

---

## ON MOTION TO DISMISS.

The opinion of the court was delivered by

WATKINS, J. In the lower court intervenors joined plaintiffs in the prosecution of their suit, a general judgment was rendered in favor of defendants, and plaintiffs and intervenors have appealed.

In this court plaintiffs seek to dismiss intervenors' appeal, (1) because there was no order of court fixing the amount of bond, and (2) because intervenors furnished no appeal bond.

The order of court is couched in general terms. It was granted in open court, on the motion of plaintiffs and intervenors respectively, and the respective appeals were made returnable to this court. It is true that the language employed by the judge *a quo* in the concluding part of the order is "on the *plaintiff's* giving bond in the sum of fifty dollars for a divolutive appeal," without making any mention of the intervenors. That is a mere *casus omissus*, and is evidently the result of inadvertence. Mention is made of the plaintiffs and intervenors in the commencement, and the omission of intervenors in the conclusion of the order of appeal can not work the revocation of it *in toto* as to them, and leave it in *propriore vigore* as to plaintiffs.

At the time plaintiffs' motion to dismiss was filed, the transcript did not contain the appeal bond of intervenors, but it has been produced since and filed. The filing of the bond serves to show how the order of appeal was construed by the intervenors, and our opinion is that their interpretation of it was correct.

The motion is therefore dismissed.

### ON THE MERITS.

Sundry creditors of Covington unite in this suit for the revocation of an alleged fraudulent sale by him to one Fudickar.

Their complaint is, that the conveyance covered the entire contents of the vendor's two store-houses, situated in the town of West Monroe, composing his stock of merchandise, and that the transaction was fraudulently and collusively entered into by both parties —same being out of the usual course of vendor's business, the price inadequate, and the insolvency of the vendor being known at the time to the vendee.

Averment is made that the alleged sale was entered into with the intention of defrauding Covington's creditors, and of giving an undue preference to some of them, whereby petitioners will be injured if same is consummated.

Further averment is made that all of Covington's *other* property was under seizure by various attaching creditors; that they had also attached, but their attachments were subsequent in order, and of inferior rank and privilege; and, hence, the revocation of said fraudulent sale is necessary in order that they may collect their claims.

The prayer is that said sale be annulled and revoked in so far as same affects their rights, and the property be restored and applied to the satisfaction thereof.

The intervenors joined the plaintiffs in their demand for the revocation of the sale, on the grounds above assigned.

Substantially, the defendants' answers set up the general issue, coupled with a special denial.

On the trial there was judgment for the defendants, rejecting plaintiffs and intervenors' demands.

The following is a fair summary of salient facts necessary to be considered, viz. :

At date of sale, Covington owed the two intervening banks about

$6000, represented by two notes bearing the names of two indorsers. Two days prior thereto, a conversation occurred between Fudickar and these indorsers, in the course of which one of them suggested to the latter the propriety of the sale, and the other approved of it as †feasible, giving it as his opinion that Covington was solvent—thus, inferentially, suggesting that there existed no legal impediment to its accomplishment.

On the following day Covington began taking up his stock, and when completed the inventory amounted to $5900.   On the following day the sale to Fudickar was accomplished by the execution and delivery of his note to Covington for $3850, maturing at twelve months—the price paid being a little less than two-thirds of the inventoried value of the goods.

On the following day ;Covington delivered the note to one of his indorsers, accompanied by the request that he should hold it as collateral 'security for himself and his other indorser, for whose benefit the sale was made.

On the day of the sale the Ouachita National Bank caused a writ of attachment to be issued against Covington, and process was placed in the sheriff's hands prior to the consummation of the sale to Fudickar.

Contemporaneously therewith a writ of attachment was obtained by the Merchants and Farmers Bank against Covington.

The two indorsers of Covington were directors in each of the two banks, and it was upon information furnished by one of them that the former acted in suing out its attachment.

The sheriff did not seize Covington's stock of goods, because he had been informed by him, that he had sold them to Fudickar, and upon demand being subsequently made upon him by other attaching creditors, to seize the stock of goods, he declined to do so, and required a forthcoming bond, but it was not furnished.

On this summary of the testimony, it is our opinion that the judgment appealed from is correct, inasmuch as there is nothing to show that Fudickar had any knowledge of Covington's fraudulent purposes in disposing of his property.   For it may have been the intention of the latter to give an unfair preference to *others* of his creditors over the plaintiffs, *ultimately*, but Fudickar not being a creditor, the price of the goods was not absorbed to any extent by

any debt of Covington, and nothing in the transaction itself pointed to such an intention or purpose on the part of Covington.

Fudickar paid the price, which was a fair one, by giving his note, which was a gilt-edged piece of commercial paper, and at once took the goods to himself.

By this transaction, it is true, the goods and property of Covington were illegally absorbed and misapplied, to the injury of his creditors, but they can not be reached and recovered by them without convicting Fudickar, a mere stranger, of participation in the fraudulent design.

It is of no consequence, in such a case, that the vendors were notoriously insolvent to the knowledge of the vendee, and that the transaction was not "in the usual course of the party's business." The provisions of R. C. C. 1984 and 1986 have exclusive reference to reprobated transactions between debtor and creditor.

In Pochelu vs. Catonuet, 40 An. 327, we had under consideration and construed the last cited article as appertaining to a precisely similar case, and, in the course of our opinion, said: "It is evident to our minds that neither Maylie nor Rougagnac were bound in an way for the payment of the debt due the plaintiff. There was no legal impediment existing to prevent Maylie loaning, or Rougagnac borrowing the $4000 with which he paid the purchase price to Navos. There was nothing to prevent Navos from selling to Rougagnac for cash, even though he were in insolvent circumstances to the knowledge of the purchaser at the time. A sale to one *not a creditor* must be considered as one made in the ordinary course of business, if made for an adequate consideration, paid *in cash*. The fact that a portion of the puchase money was applied to the discharge of vendor's debts will not vitiate it as an onerous contract."

In support of that view we quoted with approval Maurin vs. Rouquit, 19 La. 594, and affirmed it. The principles therein announced are strictly applicable to this case.

Counsel for defendants insist that the indorsers of Covington were not, at the time of sale, his *creditors*, and, for that reason, ask us to declare the transaction between them and Covington exempt from the operation and effect of the statute of frauds. That is a question we can not, at present, decide, for the indorsers, neither as such nor as directors of the intervening banks, are cited in this suit and made parties, and, therefore, no judgment can be rendered that would be

binding upon them.   In addition, we are informed that this question is involved in another suit against the banks, which is pending in the district court.   We are at present concerned with the sale of Covington to Fudickar alone, and not with Covington's disposition of Fudickar's note, with which the latter had nothing to do, and with which the plaintiff's petition does not deal.

For these reasons we are of opinion that, the judgment should be affirmed, and it is so ordered.

### ON APPLICATION FOR REHEARING.

An extended and earnest application is presented in this case, but there are only one or two questions upon which we deem it necessary to make any additional expression of opinion.

### I.

Counsel complains of the construction placed, by the opinion, upon R. C. C. 1984 and 1986, to the effect that they have " exclusive reference to reprobated transactions between debtor and creditor;" and cite us to 34 An. 902 and 10 La. 363, as having been referred to in his brief.

In this, counsel is in error.   These authorities are not mentioned in his brief, but in the syllabus we find cited 34 An. 995 and 10 La. 370.

But an investigation has resulted in the discovery of the case of Thompson vs. Freeman, 34 An. 992, which discusses a proposition *germane* to the one under consideration, and which is predicated upon Rhodes vs. Beaman, 10 La. 369.

But those cases deal with R. C. C. 1985 *exclusively*, which is not mentioned in the opinion, and they are addressed, solely, to the question of the insolvency of the debtor as affecting the *bona fides* of the sale attacked.

In Rhodes vs. Beaman the court said:   " It is contended that the defendant, Beaman, was *not a creditor*, and that he is not shown to have had knowledge of the failing circumstances of the vendor.   We consider Article 1979 (Rev. C. C. 1985) as merely establishing a presumption against the contract, whenever it is first shown that the obligee *knew* of the discomfiture of the obligor, and when *being a creditor*, he gains an advantage over *other creditors*.   But it does not exclude *other* evidence of fraud and collusion," etc.   (Italics ours.)

Quoting and emphasizing this precept as sound, the court said in Thompson vs. Freeman:

" Therefore, when satisfied, as we are in the present case, that the contract was made in execution of a collusive purpose between the parties, to defraud and defeat creditors, and when the direct result of the contract is to leave the obligor insolvent, and actually to defeat his creditors, we will not hesitate to frustrate such schemes by annulling the contract."

These decisions are precisely in line with our opinion and the cases therein quoted. In Rhodes' case it was distinctly held that Article 1985 of the Code merely established " a presumption against the contract when it is first shown that the obligee *knew* of the discomfiture of the creditor of the obligor, and when, *being a creditor*, gains an advantage over *other creditors*." Then the court adds, that this does not exclude other evidence of fraud and collusion. And the opinion in Thompson's case was predicated upon " other evidence of fraud and collusion;" just as we hold the plaintiff should have done in this case. But not having done so, Fudickar was not connected with the *fraud* of the transaction.

A mere reference to Articles 1984 and 1986 will show that their provisions are in harmony with this view.

The last named article creates two exemptions from the law of fraud: (1) All sales of property, or other contracts made in the usual course of a party's business, and (2), the payment of a just debt in money. It seems quite clear that it has exclusive reference to transactions between debtor and creditor, for, surely, an article of the Code is not necessary to authorize a party to make sales, or contracts, with a stranger in the usual course of business. This being the case, we must look outside of it and the two preceding articles, for authority to hold Fudickar, as the court did in Thompson's case and in Rhodes' case.

We have carefully observed the comments of counsel, on the case of Pochelu quoted in our opinion; and, while there is a complete parallel between that case and the instant one, *in the particulars* mentioned, yet there are two essential differences between them, the Pochelu case being one *en declaration de simulation*, and it having been defeated, by proof of the price having been paid *in cash*. Now, while it is perfectly true that, in that case, we held that the sale having been made to one not a creditor, and for cash

894        SUPREME COURT OF LOUISIANA.

Lowenstein & Levi et al. vs. Fudickar et al.

"it must be *considered* as one made in the *usual course of business*," it does not follow that the sale by Covington to Fudickar on *terms* of *credit*, was not such a transaction. Had we thus regarded it, further comment would have been supererogatory and unavailing.

What our opinion in the Pochelu case says in reference to the character of the action, was intended to be merely suggestive and not controlling; and even if it was, the turning point therein is, the *inadequacy of price*, not existing here.

Our opinion simply holds that Fudickar not being a creditor, the price of the goods was not absorbed as a part of, or all, the consideration paid therefor; in other words, the purchaser parted with value for them, and the fact that the price, or the note given for the purchase price, was by Covington *subsequently* applied to the discharge of his debts, did not vitiate the *sale* as an onerous contract, and it will not impair any recourse creditors may have against the recipient of the proceeds thereof.

## II.

Holding as we do in our opinion, that, conceding Covington's acts to have been fraudulent, the sale could not be annulled without convicting Fudickar of participation, we considered plaintiff's bill of exception of no practical importance, as the contemplated evidence which was rejected did not have any seeming applicability to Fudickar as vendee.

The question asked of Covington was, viz.: "State the subject of this conversation with Mr. Hudson." To it the objection was that it related to professional communications between client and attorney; and if it related to his contract with Fudickar, it was inadmissible, not having occurred in his presence.

The judge's rejection of this testimony appears quite plausible, and nothing has been said on the subject to convince us that he erred.

Reexamination of the record and application has only served to strengthen our convictions in the correctness of our opinion.

Rehearing refused.