GRIFFIN BARKER and another *v.* ALFRED PHILLIPS.

The property of a debtor being the common pledge of his creditors, every act done by
him with intent to deprive them of their eventual rights upon it, is illegal.   C. C.
1963, 1964.
Where one purchases property from an absconding debtor, with notice that his object
in selling it was to deprive his creditors of their recourse upon it, and such purchase
operates to their injury, it will be annulled.   C. C. 1973.   But the purchaser, though
in bad faith, will be entitled to a restitution of so much of the consideration or price
paid by him, as he shall prove to have enured to the benefit of the creditors, by add-
ing to the amount applicable to the payment of their debts.   C. C. 1977.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

SIMON, J.   A writ of attachment having been sued out in this
case, and in two other cases against the property of one Alfred
Phillips, the same was levied upon a certain number of boxes of
merchandize and some loose dry goods, which were found in the

possession of one Stewart Haynes, who claimed them as his; whereupon the officer having refused to seize them until a bond of indemnity was given, such bond was furnished by the plaintiffs, and the sheriff proceeded to attach and seize the goods and boxes in the manner directed in the writ, and they were afterwards delivered to J. A. Beard & Co., by consent of parties.

William Haynes intervened in the suits, alleging that the property attached was his, and that the said goods and merchandize were his property before, and at the time of the execution of the writs of attachment, of which the sheriff was then informed, the same being in his possession at the time of the seizure; and that, although so informed, he did seize and take into his possession the said dry goods and merchandize, against the will of the intervenor. He prayed that the goods be decreed to be his property, and for general relief. This was generally and specially denied by the plaintiffs, who further alleged, that if any sale was ever made, the same was simulated, and intended to defraud Phillips' creditors.

The title of the intervenor to the property attached, was fully investigated below, and judgment having been rendered in favor of the plaintiffs, for the whole amount of their claim against the defendant, William Hayne's intervention was dismissed, and the amount of the judgment ordered to be paid, by preference, out of the proceeds of the property attached, and since sold by consent of parties. From this judgment, the intervenor has appealed.

The record discloses the following facts: It appears that Phillips, who was a shop-keeper in New York, some time in February, 1841, absconded from his residence, and came with his goods to New Orleans, on board of the ship Huntsville, under the feigned name of Allen Prentiss. The bill of lading was signed for eleven boxes of merchandize as shipped by A. Prentiss, to be delivered to him or to his assigns; and, on the 29th of March, an attachment having been sued out against him by one of his New York creditors, the same was levied on the goods on board of the vessel. On the 31st, another attachment was instituted against said Phillips, which was also levied on the same goods on board of the Huntsville, when, in the mean-

time, Phillips, who was in search of legal assistance, applied to Franklin Haynes, Esq., an attorney and counsellor at law, and stated to him that he had got into difficulty. He said that a creditor to the amount of $600 had seized some goods he had brought out by the ship Huntsville, with the intention of setting up in Texas, but that he should sell his goods and go up the river. F. Haynes told him to bring the invoice, and that he would show it to some persons, who, perhaps, would purchase the articles. The witness (F. Haynes) mentioned this circumstance to his brother William, and told him he had better examine the goods, as he might make a good speculation, if they could be purchased cheap enough. On the day the second seizure was made, Phillips came to Hayne's office, and informed him of his finding a purchaser for the goods, who objected on account of their being in the sheriff's hands. He said that these were all the debts he owed. F. Haynes asked him how much he would take for the goods? He said $3,000, and the witness offered him $2,500 for the whole. It was agreed, a day or two afterwards, that Mr. Haynes should have the goods for the amount offered ($2,500), and, as a part of the consideration, William Haynes was to be the security of Philipps in the two suits, for about $1600, or $1700. Phillips was asked if he owed anything more, and he said no. Witness (F. Haynes) then drew up the act of sale, which is dated the 31st March, 1841, and it was signed by Phillips. Witness' brother remarked that he had not the money, and witness offered to loan it to him, upon which witness drew a check for $800, which was given to Phillips, and he retained $1600 of the amount. Witness also made Phillips write an assignment on the bill of lading, and he signed it, but *the name inside being in the name of Prentiss, witness made him*, Phillips, *sign the assignment in the same name.* F. Haynes further states that, on the 2d of April, he drew out the check of $1600, and the amount was handed to the sheriff to make the surety of William Haynes good, whereupon the sheriff released the goods, which were removed by order of W. Haynes to the house of Stewart Haynes, to assort the goods and prepare them for sale, as he had more leisure. On the 5th of April, the sheriff seized the greater part of the goods on the writs in these cases,

and what remained were furniture, bedsteads, &c. worth about $200.

It is further established by the evidence, that William Haynes resides in the upper part of the city, at the corner of Race and Magazine streets, where he keeps a grocery establishment; that part of the goods attached were found in a private dwelling-house in Amour street, in the Third Municipality; that Stewart Haynes was there, and said that he had a bill of sale of the goods; that the officer would not seize them then, until a bond of indemnity was given, but he obtained the bond, and returned, after some time, on the same day, to make the seizure. When the goods were seized, they seemed to be the same as when they were first found. After having been put into a cart, the officer asked S. Haynes whether they were all, and he answered affirmatively, and distinctly said that these were the goods belonging to Prentiss or Phillips, who came out in the ship Huntsville.

The testimony of F. Haynes, who was the only witness examined for the intervenor, further shows, that William Haynes has satisfied him by paying him in money and in notes; that he paid $2000 in cash, and $500 in his notes; and on being asked how William Haynes acquired the money to refund it to the witness, the latter answered that his brother William had means within himself, that he is a very penurious man, and saves all he can get. The witness further sta'ed that he believed Phillips when he said he only owed $1,600; that he did not know whether Phillips, had money with him or not; that Phillips said he had property enough in New York to pay the notes; that, if the plaintiff, Hart,* had been nonsuited, the $1,600 kept back would have been given to Phillips; that he, witness, paid Phillips the $800, before he, witness, came to see any thing about the attachment, and before he knew anything about said attachment; that the goods were examined by Stewart Haynes, before they were purchased, but that the $800 was

---

* Hart was plaintiff in the two attachment suits first instituted against Phillips. These attachments were levied on the 29th and 31st March, 1841. The attachment in this suit, and in the two succeeding cases, was levied on the 5th of April.

paid before witness went to see what attachments were on the goods ; and being informed that the attachment was for $600, he was satisfied with paying Phillips $800, and keeping the $1,600.

The evidence also gives a full statement of all the circumstances which preceded and followed Phillips' absconding from New York ; of his conduct on board of the ship ; of the debts which he left unpaid ; and of the value of his stock of goods in New York previous to his departure, judged to be worth about $8000. On referring to the petitions and affidavits upon which the two first attachments were obtained and sued out, we find it therein stated, under oath, that the defendant, *Phillips, has fraudulently assumed the name of Allen Prentiss to avoid his creditors, and to disguise his property from them; that he absconded from the State of New York, is now on his way to Texas, and about to remove his property there, &c.*

With this evidence before him, the judge *a quo*, being of opinion, that "it is a manifest inference from the facts disclosed, that both W. and F. Haynes are to be legally charged with the notice of all that was alleged and sworn to in the petitions and affidavits for the two attachments, to wit : that Phillips was an absconding debtor, and had run off *under a feigned name with his property*, and that the whole circumstances were such as to put the most unsuspicious person on enquiry," came to the conclusion that, "Franklin Haynes, who is a licensed attorney and counsellor, and his brother, the intervenor, must be charged with full notice of all the facts alleged and sworn to in said petitions, and and affidavits ; that any attempt to purchase goods with a knowledge of such facts can confer no legal right to them, and that the loss of the money so advanced, is the smallest punishment which ought to be inflicted on parties who act in this manner."

It is a principle of our law, that the property of a debtor, being the common pledge of his creditors, every act done by such debtor, with the intent of depriving his creditors of the eventual right they have upon his property, is illegal (Civil Code, arts. 1963, 1964) ; and that any contract made with the view of defrauding creditors, ought to be anulled, if it prove injurious to them, unless the person with whom the debtor contracted was

in good faith.  Arts. 1973, and 1794.  This last rule, however, is subject to certain limitations which the law has provided for, and which are mentioned in the following articles of our Code on this particular subject.

Now, it cannot be denied in this case, that the sale made by Phillips to William Haynes, was by him intended to defraud the plaintiffs in the three suits ; that the property, which had originally been attached by Phillips' creditors in the two first suits, was withdrawn from the hands of the sheriff, for the purpose of avoiding the seizures which he expected would be exercised against him, and that, in the words of the law, his object was to deprive his creditors of the eventual right which they had upon the property.  But the question occurs :  Was the purchaser in good faith ?  or, in other words, had he notice of such circumstances as were sufficient to put him on his guard, and did he buy after being aware of the position in which his vendor stood towards his creditors ?  This question, in our opinion, was correctly answered in the affirmative by the judge *a quo*.  Indeed it is very difficult to believe that F. Haynes, an attorney at law, whose advice was sought by Phillips to get him out of the difficulty in which he was placed under the two attachments, Phillips having previously employed another counsel who had his office with Haynes, was ignorant of the cause which had brought the client to him.  He was an entire stranger to the counsel, who had never seen him before ;  and, even supposing that the bargain was made before said counsel had an opportunity of seeing the papers in the attachment suits, yet it is established by the latter's testimony that, on the very day the second attachment was levied, on the 31st March, which circumstance induced Phillips to hasten to accept the offer and close the bargain, the bill of lading, taken *under a false name*, was assigned by him to the vendee, and that the assignment was signed by Phillips *under his feigned name*.  Was not this a sufficient circumstance to put him on his guard ?  In the words of the judge *a quo*, was it not such as to put the most unsuspicious person on enquiry ?  What was Phillips' object in using a false name ?  to conceal himself and his property !  He said, it is true, that he owed no debt but the two on which the attachment was issued ; but who

could believe him? We understand how this business was carried on; the sum of $800 was paid before the counsel, as he states, knew anything about the attachments; but he was aware that the attachments had been sued out; that the goods were in the sheriff's hands, and could not be taken out without security. William Haynes attempted to become surety without depositing the money, and when he signed the bond and deposited $1,600, his brother was with him, and filled up the blanks. Then, at least, he must have had communication of the papers, and have become acquainted with the true position of Phillips; and why did he then complete the bargain, by paying the $1,600? Why did he not withdraw from it, and claim back the $800 already paid? It was because it was thought that the bargain was an advantageous one, and that the profits could be realized before any other attachment could issue. William Haynes resided in the upper part of the city, and the goods were taken to Amour street, in the Third Municipality. They were put in a small dwelling-house, and not in a store or warehouse, and Phillips disappeared immediately after the bargain was closed!

Without its being necessary to review again the evidence, we are satisfied under it, that F. Haynes and William Haynes were perfectly aware of the circumstances which compelled Phillips to part with his goods; that the purchase was made under very suspicious circumstances, from a man, who, with his feigned name, was unworthy to be trusted or to be believed. Nay, the false name which he bore in the bill of lading was enough to raise the greatest suspicion; and it seems to us clear, that the attorney at law who suggested the purchase, and his brother, who bought the goods, had sufficient, and even full notice that they were sold in fraud of the rights of the vendor's creditors.

The judge *a quo*, however, went too far in inflicting what he calls "the smallest punishment." Art. 1977 of the Civil Code says, that " *if the party with whom the debtor contracted, be in fraud, as well as the debtor, he shall not on annulling the contract, be entitled to a restitution of the price or consideration he may have paid, except for so much as he shall prove has inured to the benefit of the creditors, by adding to the amount of property applicable to the payment of their debts,*" &c. Here, it is proved, that $1,600 went

Barker and another v. Phillips.

to the payment of Phillips' debts; and that sum was paid to release the two first attachments, which, if not released, would have necessarily occasioned a diminution of so much on the property subsequently attached. It is clear, therefore, that this sum inured to the benefit of the creditors, by being added to the amount of the property applicable to the payment of the debts on which all the attachments issued; and under the above provision of the law, which cannot be disregarded, it must be reimbursed to the purchaser, who, however, must also suffer a loss of the $800 paid to the debtor. This is the only extent of the punishment inflicted by law, as it cannot go further than the sum paid to, or due from the fraudulent debtor to, or by the party with whom he contracted. The judgment appealed from must, therefore, be amended, so as to allow the intervenor the reimbursement of the sum of $1,600, out of the proceeds of the sale of the property attached; and this is the only relief which the appellant is legally entitled to.

It is, therefore, ordered and decreed that the judgment of the Commercial Court, so far as it annuls the sale of the goods attached from Phillips to the intervenor, by dismissing the intervention on its merits, be affirmed; but it is further ordered and decreed, that the said intervenor do recover the sum of sixteen hundred dollars, to be paid to him out of the proceeds of the sale of the goods attached in the three suits; the balance of said proceeds to be divided between the three attaching creditors, according to law, and that the appellees pay the costs of this appeal.

(*See order modifying this judgment*, post p. 200.)

*Lockett* and *Micou*, for the plaintiffs.

*F. Haynes*, for the appellant.