The opinion of the Court was delivered by
Fenner, J.
This is an action by plaintiffs, creditors of T. J. Freeman, to recover judgment against him for their debt, and at the same time, to revoke certain contracts by wbicli his property was conveyed to his son-in-law, J. C. Pryór, and to his wife, who are both made parties defendant.
There was judgment in the lower court, in favor of plaintiffs, against the defendant for a less amount than was claimed, and revoking the conveyance of property to Pryor, but rejecting the demand in revocation of the conveyance to the wife, Mrs. Freeman.
Plaintiffs, Pryor and Freeman, have all appealed.
*993 I.
Plaintiffs complain of tlie reduction made in their claim against defendant. Plaintiffs held two notes of defendant, and also an open account against him, arising out of transactions prior to 1881. Defendant shipped them certain produce, the proceeds of which were applied by plaintiffs to the liquidation of the account, and the surplus was credited on the notes. They sued in this action, on the notes,' for the balance due thereon.
The answer was a general denial.
The Judge held that the credits due defendant should have been imputed first to the notes, as the most onerous debt. This decision might have been correct, had such defense been pleaded. But under the general denial, and in absence of special plea, defendant could not claim that the notes had been extinguished by payment. The plaintiffs were entitled to judgment for the amount claimed as due on the notes, with interest thereon at 8 per cent., as stipulated in said notes, and the judgment must be amended accordingly.
II.
Plaintiffs complain of the judgment, in so far as it rejects their demand to revoke the conveyance to Mrs. Freeman ; and Freeman and Pryor complain of the revocation of the conveyance to the latter.
The conveyances are attacked as having been made in fraud of creditors. The facts are as follows:
Freeman was conducting a planting and mercantile business in the Parish of Union. Pryor had married his only daughter about three years previously, and, from the date of his marriage, had lived with his father-in-law, and had acted as his clerk in his store, and had assisted him on the farm.
Freeman had, for several years, been doing business with plaintiffs, as his commission merchants; and, at the end of the year 1880, was considerably in arrears to them. In the spring of 1881, he visited them in New Orleans, for the purpose, of securing advances for the current year. Although plaintiffs were reluctant to grant them, yet upon Freeman’s representations as to his property, and as to his crop prospects, and especially upon his assurance that he was free from debt and owed not a dollar to any one except plaintiffs, the latter consented, and Freeman immediately received from them advances and supplies to a large amount.
Yery shortly after his return home, he executed a donation inter vivos in favor ox his daughter, Mrs. Pryor, of nearly the whole of his tangible property, except about 160 acres of land and some personal property, which, on the same day, he set apart and recorded as a homestead *994 claim. Directly afterwards, he sold out to Pryor the goods and merchandise of his store, together with a lot of notes and accounts, for $1400. He subsequently transferred to Pryor another lot of notes and ‘ accounts, and seven horses and mules,for $800 ; and, then, to complete ali, transferred to Pryor his entire crop of 1881, in consideration of Pryor’s giving himself and wife a living during the year.
Tale & Bowling, creditors of Freeman, getting wind of these transactions, brought suit to annul the donation to his daughter. Judgment was rendered annulling the same, and, on appeal to the Circuit Court, was affirmed.
Immediately on the rendition of this last judgment, Mrs. Pryor, aided by her husband, executed a notarial retrocession to Freeman of all the property which had been donated to her; and, on the same day, Freeman executed, in favor of his wife, a transfer of that property, (or most of it) together with the property which he had previously set apart as a homestead, in settlement., as claimed, of a debt due her on account of her paraphernal funds received and used by him.
As a result of these flagitious transactions, Freeman stood before the world stripped of all his valuable property, worth not less than $8,000, with only $2,200 in money supposed to have been received from Pryor, which, if it had been paid and had not been spent, was in his pocket and beyond the reach of his creditors, while the whole of his property ■remains in the possession of his own family. Even counting the $2,290 as paid and remaining in his possession, he is left an undoubted insolvent, and without means sufficient to pay his debts.
We will not waste breath in detailing the consideration (forcibly stated in the opinion of the Judge a gun) supporting the self-evident conclusion from the above facts, that these transactions, from beginning to end, were conceived and executed with the sole and obvious purpose of committing a fraud upon the rights of creditors; that both Pryor and Mrs. Freeman must have been cognizant of this transparent purpose; and, indeed, that it was a collusive scheme in which all the parties participated to effect this unlawful purpose.
Pryor’s defense is confined to faint denials that he knew of the insolvency of Freeman. He does not expressly deny that he knew of the purpose to defeat Freeman’s creditors. The question of Freeman’s anterior insolvency vel non is of minor consequence. It is’sufficient to know that the effect of these transactions is to make him insolvent, and to defraud his creditors.
It is a mistake to suppose that insolvency of the debtor and knowledge thereof by the party with whom he contracts, constitute the sole ground upon which contracts can be annulled for fraud upon the rights of creditors. General dicta to that effect, found in decisions, are appli *995 cable to the cases in which they are uttered, when the parties are merely preferred creditors, or where insolvency and knowledge thereof were the grounds upon which the charge of fraud was based. In such cases, of course, the insolvency and knowledge are essential elements of proof. But it is well settled, that “the debtor’s property being the common pledge of his creditors, every act, device or machination, by which they are prejudiced, may form the subject of the revocatory action,” referring, of course, to “acts, devices and machinations,” to the fraudulent purpose of which the third persons were parties. Fennessey vs. Gonsoulin, 11 La. 424; Hempkin vs. Bowman, 16 La. 367; Barker vs. Phillips, 11 Rob. 190 ; Stone vs. Kidder, 6 An. 552.
In another case, the correct principle, patent on the face of the Articles of the Code, was more distinctly announced, as follows :
“ It is contended that the defendant, Beaman, was not a creditor, and that lie is not shown to have had knowledge of the failing circumstances of the vendors. We consider this Article 1979, (Bev. C. 1985) as merely establishing a presumption against the contract, whenever it is first shown that the obligee knew of the discomfiture of the obligor, and when, being a creditor, he gains an advantage over other creditors. But it does not exclude other evidence of fraud and collusion, and does not control- the broad principle established by the Code, that every contract may be an object of the revocatory action which was made in fraud of the rights of creditors.” Bhodes vs. Beaman, 10 La. 369.
Therefore, when satisfied, as we are in the present case, that the contract was made in execution of a collusive purpose between the parties to defraud and defeat creditors, and when the direct result of the contract is to leave the obligor insolvent, and actually to defeat creditors', we will not hesitate to frustrate such schemes by annulling the contract.
We confirm the conclusions readied by the District Judge, that the contracts with Pryor were fraudulent, within the spirit and meaning of the Articles, and that plaintiffs were entitled to have them revoked.
The case of Mrs. Freeman, however, presents different features.
The transfer to her purports to have been made in satisfaction of her paraphernal claims, and the jurisprudence is settled that such transfers are not subject to the ordinary rules governing the revocatory action, and that neither the pecuniary embarrassment nor the actual insolvency of the husband, nor injury to' the rights of creditors, present any obstacle to bona fide transfers in satisfaction of such claims, when shown to be real and genuine. The reasons for this distinction are well stated in the following cases: Levi vs. Morgan, 33 An. 536; Lehman vs. Levy, 30 An. 745; Judice vs. Neda, 8 An. 485.
*996 And, although we believe that the purpose of the transfer, at the time when made, was to give her a preference over other creditors, yet if the parties had the legal right to make the transfer, the injury to creditors is damnum absque injuria.
It devolved, however, on the defendants to establish the reality of the paraphernal claims alleged to have been satisfied by the transfer.
For this purpose they offered to introduce in evidence what purported to be the original record in the succession of Isaac and Sarah Cole, which belonged to the Court of the Parish of Ouachita, outside of the District presided over by the Judge a quo. Counsel for plaintiff objected to the introduction of these papers, on the ground that they were not authenticated, and that there was no proof that they were the originals which they were claimed tobe. The Judge overruled this objection. We find no proof in the record to establish the genuineness of the papers, and we think, under the circumstances, the Judge erred in overruling the objection. Certified copies of the record should have been produced, or, at least, some official certificate or other proof, to establish that the papers were what they purported to be. A contrary rule would open the door to fraudulent substitution of papers. See Act No. 43, E. S. 1870; 1 Greenleaf Ev. § 502.
We do not feel justified, however, on this ground, to decide the case against Mrs. Freeman. Non constat, that the Judge, if he had decided this record to be inadmissible, might not have afforded the defendant time to produce proper evidence.
The case, as to Mrs. Freeman, must be remanded.
It is, therefore, ordered and decreed, that the judgment appealed from be amended as to the amount which defendant, T. J. Freeman, is condemned to pay to plaintiffs, so as to make said amount as follows, to-wit: the sum of $1,214.12, with interest at 8 per cent, per annum thereon, from June 7th, 1881, and the further sum of $1,785.51, with five per cent, per annum interest on $1,649.46, from July 1st, 1881, and on $122.10 from January 4th, 1882; that so much of said judgment as rejects the demand of plaintiffs to have the transfer fromT. J. Freeman to his wife declared null, be annulled, avoided and reversed. That said judgment, in all other respects, and as amended hereby, be affirmed; and that as to the claim for nullity of the transfer from Freeman to his wife, the cause be remanded to the lower court for further proceedings according to law; costs of this appeal to be paid by defendants.