BREAUX, C. J.
Plaintiff in this suit claimed an amount due him on a note signed by the defendant company as maker and on an open account.
The former was for the sum of $2,-956.67, the latter for the sum of $2,249.02.
After the suit had been brought the defendant paid the open account, as it discovered (as it contends) that it was its debt for goods and merchandise sold to it. It did not pay the note; its contention being that it represented an old debt of the Leesville Lumber Company, and not a debt of the defendant company.
The trial judge overlooked the payment of the open account, and rendered a judgment for both the amount of the note and the amount of the open account.
It is a part of the history of this ease that, at the instance of a creditor of the defendant, a receiver was appointed, rendered necessary by the condition of its business.
The defendant resists payment, and points to the Leesville Lumber Company as the debtor. It is in place to state that the Lees-ville Lumber Company was a corporation organized under the laws of Louisiana, while the Gulf Land & Lumber Company was organized in Missouri. Thomas Stables was president of both companies. He signed the note sued on as president of the Gulf Land & Lumber Company.
The Leesville Lumber Conqpany, represented, by Stables, president, and Powell, secretary, transferred all of its personal property, consisting of sawmill and all of its appurtenances, equipments, locomotive shops, 35,000,000 of stumpage, for the price of $140,000. The Leesville Company also sold to defendant some lands owned by it situated in Vernon parish.
After these sales there remained to it a small planing mill at some distance from the main plant, and its open accounts, of little value.
This sale put an end to the business of the Leesville Lumber Company, as it never attempted to do any business after this sale.
The obligation of defendant on the note on which suit had been brought by plaintiff presents the first question.
The argument is advanced by defendant that it is an independent and separate corporation, and it is not in any way indebted to the Leesville Lumber Company, Limited. We do not find it possible to agree with that proposition. The defendant is in possession of the property that formerly belonged to the Leesville Lumber Company. This property has given to the defendant the value it has.
But leaving this branch of the case for a moment, and taking up the legal status of these companies, there was considerable testimony introduced by plaintiff to prove that the Gulf Land & Lumber Company was the successor of the Leesville Lumber Company, Limited. Graham, a witness, and a director of the defendant company, testified that it was the Leesville Lumber Company that organized the Gulf Land & Lumber Company, and that the purpose of the organization was to increase the capital and the business of the concern.
To this witness the question was propounded:
“Q. What was the stock in the Gulf Land & Lumber Company issued to you for? Was it in lieu of your stock in the Leesville Lumber Company, Limited?
“A. Yes, sir; I think it took the place of it."
*429 Powell, secretary of the old company, testified that all its stockholders participated in the organization of the .Gulf Land & Lumber Company. He also testified that the old company was financially embarrassed, and that, by the organization of the Gulf Land & Lumber Company, the purpose was to take over property of the Leesville Lumber Company, Limited, and to get the property in money to continue the business; that all the property of the old company was transferred to the defendant company, except two items of comparatively little value.
“Q. Was it not a fact that you and Mr. Stables, the two Grahams, and perhaps Mrs. Stables, took stock in the Gulf Land & Lumber Company for your interest in the property of the Leesville Lumber Company, Limited?
“A. Yes, sir.”
This witness testified, further, that he paid no money for his stock, but exchanged his stock for that of the Gulf Land & Lumber Company, and that it was the same way with Stables, who owned a large number of shares in the old company, over $60,000 in amount; also the same with H. M. Graham, all actively interested in the old company.
The witness signed a deed of sale from the old to the new, in which it is stated that $140,000 in cash was paid, but this is not borne out by the evidence. He testified that it is not to his knowledge that the Leesville Lumber Company, Limited, received any money as a consideration for the sale.
The land on which the mill stood, a separate piece of property, was sold in a separate deed for the asserted price of $1, not a serious consideration.
This deed cannot well be considered as having resulted in selling the property from the old to the new company. .
J. W. Williams, treasurer and director of the old company, testified that, if there was anything paid by the new corporation, he knew: nothing about it.
On the part of the defendant, R. Rhodes, as a witness, was positive as to a number of shareholders who paid for their stock. He at first stated that he would not have bought stock in the Gulf Land & Lumber Company if it had not been for the fact that they were “taking over” the Leesville Lumber Company, Limited.
This witness stated that at first in organizing the new company the organizers did not comply with the laws of Missouri. The following is his testimony on the subject:
“Q. Was the organization ever completed?
“A. No, sir; it was not.
“Q. Why wasn’t it?
“A. Because they did not comply with the laws of Missouri.
“Q. Why didn’t they?
“A. The stock was not paid up.
“Q. Are you sure there was no stock paid up?
“A. Yes, sir; X am sure there was not.”
But afterward this witness testified:
“Q. And to whom were these notes turned over?
“A. Mr. Stables took the check and Mr. Powell took the note.
“Q. Then why did you turn over property belonging to the Leesville Lumber Company to the Gulf Land & Lumber Company?
“A. Because Mr. Stables was a member of both companies, and could represent both.
“Q. Did that $75,000 go to the Gulf Land & Lumber Company or to the Lieesville Lumber Company, Limited?
“A. Partly to both.
“Q. 1-Iow came the Gulf Land & Lumber Company to have any interest in the $75,000 when you were paying it for the holding to the Lees-ville Lumber Company, Limited?
“A. We did not pay altogether in cash.
“Q. flow did the Gulf Land & Lumber Company have any interest in it? You are speaking about the $75,000 you said a while ago paid to Mr. Stables, are you?
“A. Mr. Stables took the rest of his in stock, making $147,000.
“Q. Now, how did the Gulf Land & Lumber Company have any interest in the $75,000 that you are paying to the Leesville Lumber Company for its holding?
“A. We did not pay to the Leesville Lumber Company. We paid to Mr. Stables.
“Q. I understand that Mr. Stables took his part of the interest in cash?
“A. I did not say that.
“Q. Well, how much stock did Mr. Stables take for his interest in the Lieesville Lumber Company, Limited?
• “A. I think it was 800 shares. I will not say positively.”
*431 It begins with cash, paid as the purchase price by the new company for the assets of the old company. Afterward instead of a cash price the vendor accepted stock in the company for the price. There is no satisfactory evidence of payment.
The property was disposed of without much concern in the interest of creditors of the old company.
In leaving the verbal testimony, we take up for a moment a number of letters in the record relating to the indebtedness claimed by the plaintiff. By these it appears that there were two claims of plaintiff — one on an open account, and the other on the note sued on.
The point is made here that defendant did not acknowledge the note, because in these letters to plaintiff it referred to the open account, and acknowledged its indebtedness for it.
In two of these letters the note is expressly mentioned, and the defendant company, through its officers, promised to pay not particularly the open account, but the note.
Leaving the matter of these letters, we note that several witnesses were examined under commission, among them the president, Stables, who took an active part in the transaction. 1-Ie testified that he sold part of the assets of the Leesville Lumber Company to the defendant; that he personally was to pay the debt due by the Leesville Company out of proceeds of the sale as he had assumed them all.
This is limited to himself. No one seems to have agreed with him about his assumption. If there was such an assumption, plaintiff is not bound by it.
With reference to an amount of $1,000, a debt of the Leesville Lumber Company, Limited, to the Pickering Company, another company, he says that that amount was paid for him and charged to his personal account on the books of the Gulf Land & Lumber Company;
Through this president the Gulf Land & Lumber Company was conveniently used, for the payment he had assumed to pay. The company paid, and it is followed by the statement that it was paid on the president’s order for his own account.
The evidence shows that the sawmill of the old company was taken charge of by the new company. There was no change made save in the personnel of the office.
This is a stronger case for plaintiff than was the case of Hancock v. Holbrook, 40 La. Ann. 61, 3 South. 351, and the cited decisions therein.
The defendant company never repudiated the debt, at any time before this suit was instituted, and, for all we know, the president who signed the note is president át this time.
We state in conclusion that the stock of the company was transferred to the new on the date that the charter of the latter was adopted in Missouri, viz., September 1, 1904. The old stock took the place of an equal amount of new stock in the new company. The stockholders (with a few others) became stockholders of the new company.
Although the latter owned the stock, it continued to do business in the old name. It was during that time that it (the new company) became debtor to plaintiff.
Plaintiff’s account was opened on November 29, 1904. Plaintiff was not notified of the fact that the new company was the transferee of all the stock of the old company, and it therefore continued to charge the old company until the open change in January, 1905. It was then that the new company made a partial payment and executed its notes for the balance.
If after the transfer of the stock to the date of the deed of sale (that did not convey more property to defendant than had been transferred when the stock was transferred to it) the new company had made a *433 profit ®f $100,000, it would have been its profit and that of its stockholders.
It cannot well be held that they (these stockholders) are not liable for the debt, as they were interested in the profits.
Something has been said of the remaining assets of little value as not having been transferred by the deed of sale. If they still belong to the Leesville Company, they are subject to the claim of the shareholders of that company.
For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from be amended, and that there be judgment in favor of plaintiff and against defendant for $2,956.67, with 8 per cent, per annum interest thereon from January 1, 1905, until paid.
It is further ordered, adjudged, and decreed that plaintiff do 'have judgment and recover 10 per cent, attorney’s fees on said amount.
The claim of plaintiff on open account and interest on open account is rejected.
As amended the judgment appealed from is affirmed, appellee to pay the cost of appeal.
PROVOSTX, J., dissents.