142 So. 135

PRICE v. FLORSHEIM et al.

No. 31341.

April 25, 1932.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant, Brenner Inv. Corporation.

Cook & Cook and C. D. Egan, all of Shreveport, for appellant Mrs. Bertha Brenner Florsheim.

R. G. Pleasant and Galloway & Johnson, all of Shreveport, for appellee.

BRUNOT, J.

This is a suit against Mrs. Bertha B. Florsheim and Brenner Investment Corporation. Other parties were named as defendants in the petition, but, upon the filing and ruling upon an exception of misjoinder, the plaintiff elected to proceed against Mrs. Bertha B. Florsheim and Brenner Investment Corporation.

The plaintiff obtained a judgment against Mrs. Bertha B. Florsheim for the sum of $4,000. At that time Mrs. Florsheim owned property in the city of Shreveport and its suburbs of an alleged value exceeding the sum of $225,000. On appeal to the Court of Appeal, the judgment in favor of the plaintiff was affirmed. 13 La. App. 298, 127 So. 22. Before this judgment became executory, the Brenner Investment Corporation was organized, the incorporators being Mrs. Bertha B. Florsheim, Marks Meyer, her uncle, and Alphonse and Charles M. Brenner, her brothers. Mrs. Florsheim and Charles M. Brenner, the surety on Mrs. Florsheim's appeal bond, transferred to the Brenner Investment Corporation all of the property they owned in payment of the shares of stock of the corporation issued to them. Of the authorized issue of 668 shares of stock, 499 shares were issued to Mrs. Bertha B. Florsheim, 82 shares to C. M. Brenner, 86 shares to Alphonse Brenner, and 1 share to Marks Meyer. The corporation was organized April 17, 1930. On May 20, 1930, the plaintiff, in an effort to execute her judgment, caused a fi. fa. to issue against Mrs. Bertha B. Florsheim. The writ was returned nulla bona. The plaintiff then secured judgment against C. M. Brenner, the surety on Mrs. Florsheim's appeal bond, and sought to execute the judgment, but this writ was also returned nulla bona. The plaintiff then filed this suit. The prayer of the petition is for a judgment in favor of the plaintiff declaring the conveyance from Mrs. Bertha B. Florsheim to the Brenner Investment Corporation to be a fraudulent conveyance and as such null and void, and decreeing that the property described in the petition is subject to execution in satisfaction of plaintiff's judgment; and, in the alternative, for judgment declaring the conveyance a simulation and for a money judgment against the Brenner Investment Corporation for $4,073.60 and costs.

Mrs. Bertha B. Florsheim, in her answer, admits the facts alleged relative to the judgment rendered in favor of the plaintiff. She also admits the organization of the Brenner Investment Corporation, the facts recited in its articles of incorporation, the transfer, by her, to the corporation of the property described in the deed of conveyance, the alleged consideration for said property, and that Charles M. Brenner and Alphonse Brenner transferred property to the corporation in payment of capital stock of the corporation

issued to them. She admits the issuance of the writ of fi. fa. and its nonexecution as alleged, but denies all other material allegations of the petition. The answer of the Brenner Investment Corporation, in so far as it is affected, is substantially the same as that of Mrs. Florsheim. The case was tried and submitted on the issues presented, and the court rendered judgment in favor of the plaintiff decreeing the sale from Mrs. Bertha B. Florsheim to Brenner Investment Corporation to be fraudulent, annulling it in so far as the plaintiff is concerned, subjecting the property to execution under the plaintiff's judgment, and taxing the defendants with the costs.

Both defendants appealed from the judgment, but the Brenner Investment Corporation alone perfected an appeal.

█ The appellee has answered the appeal and prays for an affirmance of the judgment and for judgment for an additional sum of 10 per cent. of the amount of the judgment as damages for a frivolous appeal.

This is not an appeal from a money judgment; therefore there is no sum upon which damages may be assessed for a frivolous appeal.

This being a revocatory action, defendants contend that it was necessary for plaintiff to show that Mrs. Florsheim was insolvent when she deeded her property to the Brenner Investment Corporation, but the plaintiff has alleged and shown the contrary. With respect to this contention and the testimony in the case, the learned district judge says:

"There are many decisions holding that insolvency at time of suit is a condition precedent, but the question involved here is not so plain. Civ. Code, art. 1971 reads: 'This action can only be exercised when the debtor has not property sufficient to pay the debt of the complaining creditor. * * *'

"There is nothing in that even suggesting insolvency at time of contract, but counsel says that article 1985 shows that it means that. It reads: 'By being in insolvent circumstances is meant, that the whole property and credits are not equal in amount, at a fair appraisement, to the debts due by the party. And if he, who alleges the insolvency shows the amount of debts, it is incumbent on the other party to show property to an equal or greater amount. To prove the state of his affairs at the period of the contract, the debtor may, at the option of the plaintiff, be examined as a witness in the action for annulling the contract.'

"The first part of the contract has no significance, but the last part apparently has.

"The preceding articles deal with unfair preferences and presumptions of fraud when the creditor obligee knew the debtor was insolvent at the time of the contract. And we think it was to this situation the latter part of article 1985 referred. Article 1984 refers to insolvency at time of contract to knowledge of creditor raising a presumption of fraud, and this is the insolvency referred to in article 1985. See Lowenstein & Levi v. Fudickar, 43 La. Ann. 886.

"But counsel says the question has been decided in Hart & Company v. Bowie, 34 La. Ann. 323 and Hicks Company v. Thomas, 114 La. 219, 38 So. 148. We do not think either case even discussed the question. Insolvency was discussed and decided, but so far as we can see from reading the cases, the Court did not discuss the question involved here.

"The case of Thompson v. Freeman, 34 La. Ann. 992 came nearer the exact point than any other we have been able to find. It was there said:

" 'Pryor's defense is confined to faint denials that he knew of the insolvency of Freeman. He does not expressly deny that he knew of the purpose to defeat Freeman's creditors. The question of Freeman's anterior insolvency vel non is of minor consequence. It is sufficient to know that the effect of these transactions is to make him insolvent, and to defraud his creditors.

" 'It is a mistake to suppose that insolvency of the debtor and the knowledge thereof by the party with whom he contracts, constitute the sole ground upon which contracts can be annulled for fraud upon the rights of creditors. General dicta to that effect, found in decisions, are applicable to the cases in which they are uttered, when the parties are merely preferred creditors, or where insolvency and knowledge thereof were the grounds upon which the charge of fraud was based. In such cases, of course, the insolvency and knowledge are essential elements of proof. But it is well settled, that, the debtor's property being the common pledge of his creditors, every act, device or machination, by which they are prejudiced, may form the subject of the revocatory action, referring of course to acts, devices and machinations, to the fraudulent purpose of which the third persons were parties. Fennessy v. Gonsoulin, 11 La. 424, 30 Am. Dec. 720; Hempkin v. Bowmar, 16 La. 367; Barker v. Phillips, 11 Rob. 190; Stone v. Kidder, 6 La. Ann. 552.

" 'In another case, the correct principle, patent on the face of the articles of the Code, was more distinctly announced, as follows: "It is contended that the defendant Beaman, was not a creditor, and that he is not shown to have had knowledge of the failing circumstances of the vendors. We consider this article 1979 (Rev. Code, art. 1984) as merely establishing a presumption against the contract, whenever it is first shown that the obligee knew of discomfiture of the obligor, and when, being a creditor, he gains an advantage over other creditors. But it does not exclude other evidence of fraud and collusion, and does not control the broad principle established by the Code, that every contract may be an object of the revocatory action which was made in fraud of the rights of creditors." Rhodes v. Beaman, 10 La. 369.

" 'Therefore, when satisfied, as we are in the present case, that the contract was made in execution of a collusive purpose between the parties to defraud and defeat creditors, and when the direct result of the contract is to leave the obligor insolvent, and actually to defeat the creditors, we will not hesitate to frustrate such schemes by annulling the contract.'

"If 'the question of Freeman's anterior insolvency vel non' was of minor consequence, then such could not be a condition precedent. What was important, in the opinion of the court, was the direct result of the contract in causing insolvency.

"In our opinion, insolvency at time of transfer is not necessary.

"A return of nulla bona on a fi. fa. is prima facie proof of no property subject to seizure and of insolvency. Lovell v. Payne, 30 La. Ann. 511; Wheeling Pottery Co. v. Levi & Co., 48 La. Ann. 780, 19 So. 752.

"Such a return was made as to C. M. Brenner, and no effort made to refute it.

"Such a return was made as to Mrs. Florsheim, and the only effort made to refute it was the testimony of Marks Meyer to the effect that she had some little personal trinkets and rent claims of unknown value and against unknown parties. It devolved upon defendant to show this. Lovell v. Payne, 30 La. Ann. 511.

"All of the incorporators of the Brenner Investment Corporation were originally made parties to this suit, and charged with fraud. Of all those so charged, Alphonse Brenner and C. M. Brenner did not take the stand at all. Mrs. Florsheim testified under cross-examination only, and knew less than nothing about anything. Marks Meyer testified both under cross-examination and as a witness for defendant. His testimony as to the reason why the corporation was formed at that particular time is, in our opinion, ridiculous. On the formation of the corporation, Mr. Meyer transferred only a small bit of land, enough to get him one share of stock. On page 21 of evidence he was being questioned on this and testified:

" 'Q. Why didn't you transfer your stuff to the corporation?

" 'A. Didn't feel obligated, thought was plenty of time.

" 'Q. Did you advise your niece to transfer all of hers to it?

" 'A. Yes.

" 'Q. You didn't transfer all of yours?

" 'A. I had plenty of time to do that.'

"It is certainly possible to construe this as meaning that in the case of Mrs. Florsheim there was reason for hurrying.

"On page 26 of evidence, Mr. Meyer practically admitted that he told Nash Johnson (attorney for plaintiff) that it would be a long time before plaintiff got that money. This was evidently after the upper court had affirmed the judgment of the lower court.

"It is said that the transfer from Mrs. Florsheim, to the corporation did not, in the least, affect her solvency as she received stock in the corporation. All of this stock (with the exception of one share) she turned over to her uncle, Marks Meyer. That it is not this transaction (stock) which is sought to be annulled, and that it is not shown when this stock transaction took place. As this was peculiarly within the knowledge of defendant, it was defendant's duty to show it. As it stands, we can only conclude that this was only a part of the same scheme and that the 'direct result of the contract was to leave the obligor insolvent.'

"We know that fraud is a grave charge, and is not to be presumed. We also know that it is very seldom that one can get direct evidence of such a charge; it must be eked out with the little things.

"Taking everything in this case into consideration, we have no hesitancy whatever in holding that the sole purpose of the organization of the Brenner Investment Corporation at that particular time and the transfer to it by Mrs. Florsheim was to defeat the collection of plaintiff's judgment. This is something the Court cannot countenance."

We have read the record carefully and concur in Judge Bell's conclusions both of law and fact.

The judgment appealed from is therefore affirmed at appellants' cost.