ODOM, Justice.
 

 We refused to dismiss the appeal in this ease on October 29, 1934 (180 La. 814, 157 So. 726) and ordered the case set down for hearing on its merits, for reasons stated in our opinion.
 

 Counsel for the appellees have again urged and argued the motion to dismiss, and in this motion they are now joined by the trustee of Winfield S. Streater, the bankrupt, who is now a party to this suit. (See our former opinion). But nothing said at the bar or in the briefs has caused us to change our original view that the c¿se should be heard and decided on its merits. Most serious charges of fraud and unfair dealings against several persons involved were made by plaintiff in its pleadings and these charges were stressed
 
 *105
 
 during the trial in the lower court and are still urged. In fact, plaintiff bases its right to recover mainly on these charges and the testimony adduced to support them. The trial court permitted the introduction of all pertinent testimony pro and con and there was built up a voluminous and expensive record of 500 pages. The facts are all before us and it is conceded by appellees, as well as the bankrupt’s trustee, that the court is vested with jurisdiction to finally pass upon the issues involved. Counsel for the bankrupt’s trustee, speaking in their brief of the argument made by counsel for appellant that this court has jurisdiction, say:
 

 “We have no knowledge of any one questioning the jurisdiction of this court as to the result of the bankruptcy of Mr. Streater, and are unable to appreciate why the question was presented with such apparent seriousness.”
 

 It is argued by counsel for the appellee and by those for the trustee that inasmuch as Streater, the principal defendant, went into voluntary bankruptcy after the case was tried and while it was pending in the lower court on application for rehearing, and a trustee was appointed for his estate, the trustee was subrogated to all rights of action which plaintiff had to set aside the various alleged fraudulent transactions and that plaintiff has no further pecuniary interest in this litigation and is deprived of its right to control the suit in this court. Counsel for the trustee say in their brief at page 22:
 

 “The subrogation of appellant’s right of action to the trustee deprives appellant of control of this suit, but does not deprive this court of jurisdiction. Appellant has not cited,' either in its brief on the merits or in its two briefs in opposition to the motion to dismiss the appeal, one decision in opposition to the many cited supra, interpreting sections 67b and 70e [Bankr. Act, 11 USCA §§ 107 lb), 110 (e)3, vesting the trustee with all the rights of action formerly enjoyed by appellant.”
 

 The trustee is now a party to this litigation and has joined the appellees in asking that the appeal be dismissed, or if it is not dismissed, that the judgment be affirmed. As this court has jurisdiction and the trustee is now a party, we find it unnecessary to decide whether the trustee is subrogated under the allegations and facts disclosed to all the rights of action formerly enjoyed by the plaintiff, or whether the trustee is vested with control of this appeal, for it does not matter who controls it, whether appellant or the trustee. We think the appeal should not be dismissed.
 

 On the Merits.
 

 The pertinent facts leading up to the present litigation are that on October 11, 1930, this plaintiff obtained judgment against one of the defendants here, Winfield S. Streater,' and the Paggi-Streater Company, Inc., in solido, for $10,783.64, which on appeal to this court was reduced to $4,783.64, with interest and attorneys’ fees. Alliance Trust Co. v. Paggi-Streater Co., Inc., et al., 173 La. 356, 137 So. 60. That litigation took place and the judgment wak rendered in the parish of Calcasieu, where Winfield S. Streater resided and where he owned certain real property situated in the city of Lake Charles. This judgment was not recorded in the mortgage records of that parish until March 30,1931.
 

 Subsequent to the date on which that judgment was rendered, but prior to the date of
 
 *107
 
 its recordation in the mortgage records, the following transactions in which Winfield S. Streater, one of the judgment debtors, wa,s involved took place:
 

 (1) On December 16, 1930, Streater borrowed $4,000 from the Standard Bond & Mortgage Company and to secure the loan mortgaged certain real estate situated in, the city of Lake Charles.
 

 (2) On February 28, 1931, Streater and his two daughters organized the Streater Investment Corporation, with authorized capital stock of $25,000, divided into 250 shares of the par value of $100. Mr. Streater was made president, one of his daughters was made vice president and the other secretary-treasurer. Mr. Streater subscribed for 215 shares of the capital stock and each of his daughters 5 shares. The remaining 25 shares were not then issued. Mr. Streater paid for his stock with three pieces of real estate situated in Lake Charles, one of which was encumbered with the $4,000 mortgage which he had made to the Standard Bond & Mortgage Company on September 16, 1930. His daughters paid cash for their stock.
 

 (3) On March 3, 1931, Mr. Streater executed a deed conveying to the Streater Investment Corporation the three parcels of real estate situated in Lake Charles, which was all the real estate he owned, the recited consideration being $1,000 cash and $21,500 stock in the corporation, the sale being made subject to the above described mortgage.
 

 The shares of stock were promptly issued to the subscribers. As stated, these transactions took place between the date on which plaintiff obtained its judgment and the date on which it was recorded. ,
 

 Within a few days after the 215 shares of stock in the corporation were issued to Mr. Streater, he transferred 105 shares to his wife, Mrs. Elizabeth Streater, the original certificates being surrendered by him and reissued in the name of his wife.
 

 Subsequent to the date on which plaintiff’s judgment was recorded, the following transactions took place:
 

 (1) On May 19, 1931, Mr. Streater pledged to his brother, Guy F. Streater, a resident of Winona, Minn., as security for an alleged preexisting debt, the 110 shares of stock which he still owned, as well as the 105 shares owned by his wife, the stock certificates being delivered to Guy F. Streater in Minnesota, who kept them and had possession of them in Minnesota when this suit was filed on April 21, 1933.
 

 (2) On July 1, 1931, the Streater Investment Corporation executed a mortgage on a portion of the property conveyed to it by Win-field S. Streater for $1,500 in favor of A. J. Ward, a resident of New York state.
 

 (3) On November 12, 1931, the Streater Investment Corporation borrowed $3,500 from the Union Title & Guaranty Company, and to secure the loan mortgaged- part of the real estate which it had acquired from Winfield S. Streater. Mr. Leland H. Moss, an attorney, was made the nominal mortgagee, but he had no interest in the loan. The note evidencing this debt was transferred before maturity to Carter Earhardt, who now owns it. The application for this loan was made jointly by the Streater Investment Corporation and Winfield S. Streater, its president, and the loan, according to the testimony of Mr. Gehr. vice president of the Union Title &
 
 *109
 
 Guaranty Company, was made to the corporation and Winfield S. Streater. Mr. Gehr testified that in making loans to corporations it was customary to have individuals indorse the notes.
 

 (4) On December 31, 1931, Winfield S. Streater sold to the Streater Investment Corporation some 38 or 40 head of cattle for $1,-000, the price being paid with 10 shares of stock in the said corporation. These shares of stock, like the others, were pledged by Win-field S. Streater to his brother in Minnesota.
 

 The present suit was filed on April 21,1933, against Winfield S. Streater and the Paggi-Streater Company, Inc., to recover $6,840, with interest and attorneys’ fees, said indebtedness being evidenced by promissory notes. It is alleged that these defendants, together with Charles Paggi and J. B. Streater, of Beaumont, Tex., are bound in solido for the payment of the debt, but the two absentees were not made defendants.
 

 At the time each of the above enumerated transactions was entered into by Winfield S. Streater and the Streater Investment Corporation, plaintiff was a creditor of Winfield S. Streater and by this suit plaintiff attacks each of them as being simulated and fraudulent schemes and devices conceived and concocted by Winfield S. Streater, its debtor, for the sole purpose of covering up and placing his property beyond the reach of his creditors and with special design to defraud plaintiff by shielding his possessions from seizure and sale under the judicial process to which it was entitled. Plaintiff alleged that Winfield S. Streater, his daughters, the Streater Investment Corporation, and each of the mortgagees entered into conspiracies with the fraudulent purpose of shielding Streater’s property from the pursuit of .his creditors.
 

 Plaintiff made a special attack upon the organization by Streater and the members of his family of the Streater Investment Corporation, and the transfer by Streater to said corporation of his property, both real and personal. As to these transactions, it is alleged that they were made in bad faith and fraudulently for the deliberate and fraudulent purpose of placing the property of the judgment debtor beyond the reach of his creditors; that these were mere paper or pretended and not real transactions; that they were fictitious and pure fraudulent simulations; and, in the alternative, if not simulations and fictitious, then made in fraud of petitioner’s rights and should be annulled; and, if not annulled, it should be decreed that said property is still subject to the execution of the judgment in favor of plaintiff and subject to the payment of the amount due by the said Winfield S. Streater.
 

 Plaintiff prayed that the transfer made by Streater to the corporation of his real and personal property be set aside, and, in the alternative, that said property now in the hands of the corporation be decreed subject to seizure and sale to satisfy its claim. It prayed further that the mortgages, both that made by Streater and those made by the corporation, be decreed fictitious and canceled from the record.
 

 Winfield S. Streater, the Paggi-Streater Company, Inc., and the Streater Investment Corporation, as well as the mortgagees named above, were all cited and answered. They denied in answer the allegations of fraud. In addition, they set up the special plea that in
 
 *111
 
 asmuch as plaintiff did not allege that Charles Paggi and J. B. Streater, in solido debtors with Winfield S. Streater, and the Paggi-Streater Company, Inc., were insolvent, plaintiff had no cause of action to set these transactions aside even though fraudulently made.
 

 There was a money judgment for plaintiff as prayed for. In all other respects plaintiff’s demands were rejected, and it appealed.
 

 The money judgment in favor of plaintiff is not contested in this court and the judgment to that extent will be affirmed.
 

 The trial judge refused to set aside the mortgages executed by Streater individually and those made by the Streater Investment Corporation. The judgment in that respect is correct. The testimony shows that the proceeds of the $4,000 loan made by the Standard Bond & Mortgage Company to Streater individually on December 16, 1930, were used by him to build an apartment house on one of the lots in Lake Charles, which he then owned and which he subsequently transferred to the corporation which he and his daughters organized. It is further shown that the proceeds of the loan of $3,500 made by the Union Title & Guaranty Company to the S'treater Investment Corporation, as well as that made by Ward to that corporation, were all used to build a second apartment house on one of the lots which Streater had transferred to that corporation. These buildings enhanced the value of the property which plaintiff now seeks to have subjected to his claims; so that plaintiff can suffer no injury from the execution of these mortgages.
 

 We find no fraud connected with the execution of any of these mortgages. The fact that the money borrowed was used to improve the lots disproves plaintiff’s allegations of fraud. Furthermore, it is shown that these loans were made on the faith of certificates issued by proper authorities showing not only that the title to the lots stood in the names of the borrowers, but that the property was free of encumbrances, and shown further that the notes evidencing the debts passed into the hands of innocent third persons for value before maturity.
 

 Winfield S. Streater was indebted unto this plaintiff at the time and long before he and the members of his family organized the corporation styled Streater Investment Corporation, and owned property, both real and personal, which was subject to seizure and sale for the payment of plaintiff’s claim. This property was the common pledge of his creditors (Civ. Code, art. 3183) and the question presented by plaintiff’s alternative plea is whether, under the circumstances here shown, the property which Streater transferred to the corporation may now be seized and sold for the payment of his debts. Or, to state the case differently, is the corporation liable for Streater’s debts to the extent of the value of tlje property transferred?
 

 The corporation, we think, is liable. The Streater Investment Corporation was strictly a family corporation, organized by the father and his two daughters. Winfield S. Streater subscribed for practically all its capital stock, paying for it with all the property he owned which was then within the reach of his creditors. None of the capital stock ever went out of the family circle. Mr. Streater was apparently the moving spirit in its organization. He was made president of
 
 *113
 
 and controlled it. He owned and controlled practically all the assets which went into it, consisting of certain city lots and sonle cattle. Just prior to the transfer of the lots to the corporation, he borrowed money to improve them, and, after they were transferred, the corporation continued to do the same things. So far as the record discloses, Streater had nothing of value left. It is plain, therefore, that by organizing the corporation and transferring to it all that he had of any value, Streater, in effect, reincarnated himself and his business into a new and different entity. The new entity, the corporation, was but the former Streater, Streater in a new guise, a new dress. The corporation stepped into Streater’s shoes, took his place. By the simple device of organizing the corporation and transferring his property to it in exchange for its capital stock, Streater shifted the record title of his property from his name to his new entity, the corporation.
 

 The motive which prompted. Streater in bringing this corporation into being is plain enough. As we have said, only 235 of the 250 authorized shares of stock were issued, and 225 of them were issued to Winfield S. Streater, who immediately sent the certificates to his brother who lived in Minnesota, thereby placing them beyond the reach of creditors. He says he was indebted unto his brother, and pledged the stock to secure the debt. Counsel for plaintiff points out that it was not proved that he was indebted to his brother. But whether he was or not is not material. If he was, his purpose evidently was to give his brother an unfair preference. If he was not, his purpose was to place them where they could not be reached. In either event, the organization of this private corporation, the transfer to it by Streater of all the property he owned in exchange for practically all its capital stock, cannot reasonably be viewed otherwise than as schemes, subterfuges, or devices either to give an unfair preference or to escape payment of his debts. The law, as stated in the Civil Code, is that the property of a debtor is the common pledge of his creditors (article 3183) and that every act done by the debtor with intent of depriving his creditors of the eventual rights which they have upon it is illegal (article 1969), and neither this court nor any other, so far as we know, has ever permitted a debtor to resort to such schemes or devices for evading his debts.
 

 A creditor’s remedy in cases like this is either to have the transfer of the debtor’s property to the corporation set aside as a fraudulent conveyance or to obtain an order for the seizure of the property in the hands of the corporation as though no transfer had been made, and this upon the ground that ■the corporation, the new entity, is the same as the old and by taking the title to the property under such circumstances is the assumer in law
 
 of the
 
 debts of the one
 
 making the-
 
 transfer.
 

 This court has four times passed upon the question here involved. W. F. Taylor Co. v. Gulf Land & Lumber Co., 119 La. 426, 44 So. 187; Wolff v. Shreveport Gas, E. L.
 
 & P.
 
 Co., 138 La. 743, 70 So. 789, L. R. A. 1916D, 1138; Price v. Florsheim et al., 174 La. 945, 142 So. 135; and Superior Oil Co. v. William W. Baltar, Jr., et ah, 160 So. 626,
 
 [1]
 
 decided Monday, March 4, 1935. The Courts of Appeal of the state have also passed upon the question. Heard v. Monroe Sand & Gravel Co., 9 La. App. 568, 121 So. 642 (second circuit) and Wilson v. Lagasse, 12 La. App. 704, 127 So. 17.
 

 
 *115
 
 In the ease of Superior Oil Co. v. William W. Baltar, Jr. et al., supra, a debtor died leaving six children who inherited from him certain real estate in New Orleans. They accepted the succession unconditionally and thereby became bound for the debts of their ancestor. They later organized a corporation to which they transferred the property which they had inherited in payment of its capital stock, each taking stock in proportion to his interest in the real estate transferred. The foreign judgment creditor of the deceased brought suit against the heirs in New Orleans to enforce payment of his claim. Learning later that the heirs had organized the corporation and had transferred the property to it, the creditor by supplemental petition made the corporation a party defendant and sought to have it held liable for the debt. The corporation excepted to the supplemental petition on the ground that it set out no cause of action against it, an'd we said:
 

 “The gravamen of plaintiff’s complaint, as disclosed by the allegations of the petition, is that the acts of the (Baltar heirs were done with the intent of depriving plaintiff of its eventual rights on the property of its debtor. Plaintiff specifically alleges that the Baltar heirs had knowledge of its claim against the succession of their father, of the attempts made to amicably settle the claim and of the suit which was to follow in default of such settlement; that they organized the Jacinto Realty Company, Inc., the capital stock of which was divided equally among them, and transferred to that corporation all the property which they had inherited from their father, for the purpose of avoiding the consequences of plaintiff’s suit and of making impossible of execution any judgment which plaintiff might pbtain therein; that the Jacinto Realty Company, Inc., merely succeeded to the rights of ownership enjoyed by the Baltar heirs in the property; and that under the law the corporation thereby assumed the debt due to plaintiff by its incorporators and became liable in solide} with them for its payment.
 

 “The case as presented under the allegations of the petition falls within the doctrine announced by this court in Taylor Co. v. Gulf Land & Lumber Co., 119 La. 426, 44 So. 187, and Wolff v. Shreveport Gas, E. L. & P. Co., 138 La. 743, 70 So. 789, 794, L. R. A. 1916D, 1138, which was followed by the Court of Appeal for the parish of Orleans in Wilson v. Lagasse, 12 La. App. 704, 127 So. 17.”
 

 The exception of no cause of action filed by the corporation was overruled, the effect of which ruling was that inasmuch as the heirs were liable, the corporation was liable also, “as the assumer in law of the debts of the incorporators.”
 

 Plaintiff in that case did not seek to set aside the transfer made by the heirs to the corporation, but sought to hold the corporation liable “as the assumer in law of the debts of the incorporators.” That in substance is what the plaintiff in the case at bar asked in its alternative plea and prayer.
 

 In the case of Price v. Florsheim et al., 174 La. 945, 142 So. 135, 137, this court adopted the opinion of the.trial court, in which it was said:
 

 “Taking everything in this case into consideration, we have no hesitancy whatever in holding that the sole purpose of the organization of the Brenner Investment Cor
 
 *117
 
 poration at that particular time and the transfer to it by Mrs. Elorsheim was to defeat the collection of plaintiff’s judgment. This is something the Court cannot countenance.”
 

 In the ease of Shapiro v. Wilgus, decided by the Supreme Court of the United States on December 5, 1932, and reported in 287 U. S. 348, 53 S. Ct. 142, 143, 77 L. Ed. 355, 85 A. L. R. 128, the facts were that a man named Robinson, who was engaged in the lumber business, became financially embar? rassed and appealed to his creditors for time. Practically all of them consented to wait but one or two refused. The court found that Robinson believed that he could pay all of his debts if his creditors were lenient, and that he looked forward to a surplus of $100,000 if he was permitted to continue in business. The court said: “Thus pressed, the debtor cast about for a device whereby the business might go on and the importunate be held at bay.” The device to which he resorted was the organization of a corporation to which he transferred his property in payment of capital stock and thereafter having the corporation placed in the hands of a receiver. By this method Robinson, the court found, did not intend to evade the payment of his just debts, but merely intended to gain time. A few days after the receiver was appointed, Robinson’s creditor who was unwilling to grant further time brought suit against him and obtained judgment, and later brought suit in which he alleged that the conveyance from Robinson to the corporation and the resulting receivership “were parts of a single scheme to hinder and delay creditors in their lawful suits and remedies, and he prayed that he be permitted to issue a writ of fieri facias against the chattels in the possession of the receivers and to sell them so far as necessary for the satisfaction of his judgment.” The court said: “The conveyance and the receivership are fraudulent in law as against nonassenting creditors,” and it was held that the creditor was entitled either to an order for the payment of his claim by the receiver, or, in default thereof, for leave to issue execution.
 

 Following this case published in 85 A. L. R. there is a lengthy annotation at page 1S3 under the general heading “Transfers of property by debtor to corporation, in consideration of its stock, as a fraud on creditors,” where the general rale is stated as follows:
 

 “Notwithstanding that the stock, received in consideration of the transfer represents property and may be subjected by the creditors of the transferrer for the payment of their claims, such transfers have been condemned in many eases where from the surrounding circumstances and facts it was evident that the transaction was with the intent of hindering, delaying, or defrauding creditors.”
 

 In support of this text, the above case of Shapiro v. Wilgus and cases from fourteen states are cited.
 

 Under the view we take it becomes unnecessary to pass upon appellee’s plea that plaintiff’s petition set out no cause of action, because it was not alleged that J. B. Streater and Chas. Paggi were insolvent. Plaintiff had the right to seize and sell the property of any one of its in solido debtors
 
 *119
 
 (Civ. Code, art. 2094) for the payment of his debt, and as the Streater Investment Corporation succeeded Streater by taking the property which he owned it became liable for his debts.
 

 For the reasons assigned, the judgment appealed from is reversed in so far as it rejects plaintiff’s demands to be allowed to seize and sell the property transferred by Winfield S. Streater to the Streater Investment Corporation in payment of stock in that corporation, the right of the plaintiff to proceed against said property for the collection of the judgment obtained in this, as well as the former suit, being recognized. In all other respects, the judgment is affirmed, appellees to pay all costs.
 

 [1]
 

 181 La. 908.