## LINDSTROM v. SAUER. *
### No. 16214.

Court of Appeal of Louisiana. Orleans.
March 23, 1936.

Theodore H. McGiehan, of New Orleans, for appellant.

Wm. H. Talbot, of New Orleans, for appellee.

*Rehearing denied April 20, 1936.

McCALEB, Judge.

During the year 1933, C. F. Sauer & Co., Inc., a Louisiana corporation, was engaged in the motorcycle and bicycle business in the city of New Orleans. Charles F. Sauer was the president of the corporation, and owned practically all of the stock. The only other shareholders were Sauer's wife and one Frigole. The business was really that of Mr. Sauer, and the purpose of its corporation is not disclosed by the record.

This company was the agent for Harley-Davidson motorcycles in New Orleans. Its agency contract with the Harley-Davidson Motorcycle Company expired on July 1, 1933.

During the spring of 1933, Frank T. Egloff, a traveling sales representative of the Harley-Davidson Company, called upon Mr. Sauer. Upon that occasion Mr. Sauer requested Egloff to find a buyer for his (Sauer's) motorcycle business. Thereafter, during the month of June, 1933, Egloff called again to see Sauer, and at that time Sauer was still anxious to sell out the business. Egloff communicated with the head office of the Harley-Davidson Company regarding the matter, and was informed that a man named Harvey Lindstrom, from Milwaukee, Wis., was interested in purchasing Mr. Sauer's business.

On August 18, 1933, Lindstrom arrived in New Orleans and immediately contacted Sauer. The better part of that day was devoted by Lindstrom and Sauer in negotiations regarding the sale and purchase of the business. Sauer wanted $3,200 for his tools and equipment, and $1,000 for the good will of the company. Lindstrom did not want to pay for the good will, and was of the opinion that the value placed upon the tools was too high. Finally, on the next day, August 19, 1933, it was agreed that the price of the tools would be reduced to $100 and that the purchase price would be $3,000 for the equipment; $100 for the tools, and $1,000 for the good will of the business, or a total consideration of $4,100. The parties repaired to the office of a notary public, where their agreement was reduced to writing. The bill of sale shows that for the sum of $4,100 cash, C. F. Sauer & Co., Inc. conveys to Lindstrom the following:

"1. All (Used) Motor-cycles,

"2. All (New and Used) parts of Motor-cycles, including all accessories and tools, all of which is well known to the parties hereto who herewith dispenses with a detailed list thereof,

"3. Also the good will of said Motorcycle business, now and formerly conducted by the said C. F. Sauer & Co., Inc., at No. 627 St. Charles Street, New Orleans, La.,

"It being agreed and understood by and between said vendor and purchaser that the said C. F. Sauer & Co., Inc., will not engage in the motor-cycle business as long as the said purchaser shall remain in said business in the City of New Orleans, State of Louisiana."

The contest here arises by virtue of an alleged breach by Sauer of the conveyance of the good will of the motorcycle business of C. F. Sauer & Co., Inc.

Lindstrom, the plaintiff, filed a petition against Sauer individually, alleging that while the act of sale shows a purchase by him of the good will of the business of C. F. Sauer & Co., Inc., that in truth he purchased the good will of the business of Charles F. Sauer, because Sauer was the real owner of the business and was incorporated only for purposes of convenience. He further avers that the good will as purchased was never actually conveyed to him for the reason that Sauer did not go out of business, as he promised to do, but, on the contrary, remained actively engaged in the motorcycle business at the same address at which he had conducted the affairs of C. F. Sauer & Co., Inc.; that he (Sauer) advertised under the name of C. F. Sauer & Co., Inc., and other similar names, informing the public that he, Sauer, was still actively engaged in the motorcycle business, all to the damage and injury of the plaintiff. He prayed for a judgment in the sum of $1,267.90, which he alleges was the value of the good will of the business, but the evidence shows that this good will was valued by the parties at $1,000.

Plaintiff further prayed, in the alternative, that should it be found that he was without a contractual remedy, then in that event the defendant was responsible to him for damages "Ex Delicto," because the defendant had fraudulently used the name of the corporation, C. F. Sauer & Co., Inc., and other similar names, in such manner as to deprive the plaintiff of business to which he was justly entitled by virtue of his purchase of the good will of Sauer's business. Plaintiff fixes this damage at $2,000, and prays for an accounting.

In short, the main cause of action is for damages resulting from breach of contract, and, alternatively, a plea for damages because of injury suffered by him because of the unfair competition and practices of the defendant.

To this petition the defendant, Sauer, filed an exception of no cause of action. The exception is founded upon the theory that the petition on its face shows that plaintiff made a contract with a corporation, which is a separate and distinct entity from the persons who compose it; that while the good will of the corporation was conveyed to the plaintiff, this fact did not give plaintiff the right to use the name of the corporation in his business, and that the defendant was justified in using the name of the corporation and always had the inherent right of going into business in his own name. The exception of no cause of action also brings up for consideration the question of the validity of that part of the sale contract whereby it was agreed by the corporation, C. F. Sauer & Co., Inc., that it would not engage in the motorcycle business in New Orleans as long as the plaintiff remained in said business.

In passing upon the soundness of the exception of no cause of action, we are confronted with the proposition that the plaintiff made a contract with a corporation and is now attempting to hold one of the members, an officer and stockholder of that corporation, liable individually for breach of that contract. We are pressed to hold that a corporation is a legal entity separate and distinct from the persons who compose it, and that no member or shareholder of the corporation is responsible for the liabilities of such corporation over and above the amount of his unpaid subscription to the stock of the same.

This contention is undoubtedly a statement of the general rule, but the petition alleges, in no uncertain terms, that the business owned by C. F. Sauer & Co., Inc., was, in truth and in fact, the business of C. F. Sauer individually; that he, Sauer, was the owner of all of the stock of the corporation, and the obvious purpose of the formation of the corporation was for convenience only.

The courts of Louisiana have had occasion to pass upon this question in a number of cases and the jurisprudence seems to be well settled that, where an individual forms a corporation, of which he is the sole and only stockholder, or owns such control of the stock that, to all intents and purposes, the act of the corporation is his own, then he may not use the screen of corporate entity to absolve him from responsibility. See Wilson v. Lagasse, 12 La.App. 704, 127 So. 17; Price v. Florsheim et al., 174 La. 945, 142 So. 135; Superior Oil Co. v. Baltar et al., 181 La. 908, 160 So. 626; Alliance Trust Co. v. Streater, 182 La. 102, 161 So. 168. In the case of Heard v. Monroe Sand & Gravel Co., 9 La.App. 568, 121 So. 642, at page 645 Mr. Justice Odom, at that time a judge of the Court of Appeal, said: "Our conclusion is, and we hold, that the defendant corporation is bound to the same extent that Stephenson himself was bound, not solely upon the ground, as argued by counsel for plaintiff, that there was an implied assumpsit or a quasi contract, but *upon the ground that a consideration of all the facts and circumstances connected with the formation of the corporation, and its subsequent management, lead irresistibly to the conclusion that the business carried on by the corporation was in fact but a continuation of Stephenson's business under a new guise, a merger of his private business into a corporation of which he was the sole managing head and director, and of which he was practically the sole owner."* (Italics ours.)

The only difference that may be drawn between the facts of the case above quoted and the allegations of the petition in the case at bar is that, in the Heard case, Stephenson contracted the obligation and afterwards formed a corporation of which he was the true owner and sought to hide behind the corporate entity in order to escape liability; whereas, in the case at bar, Sauer had previously formed a corporation for his convenience, and, after conveying the good will of that corporation, seeks to cover behind the corporate veil in respect to his personal liability, where he has by his actions deprived the plaintiff of certain acquired rights which plaintiff, by virtue of his purchase, was entitled to enjoy.

The principle of the law, however, is the same, and we believe it to be a wholesome one, that a person who incorporates himself for convenience, being in truth the sole owner of the corporation, and who conveys the good will of that corporation, may not thereafter, in answer to a suit resulting in damage by virtue of his

personal wrongdoings, cloak himself behind the alleged corporate entity to shield himself from personal responsibility. In such cases, particularly where deception is averred, the court must look to the substance rather than to the form.

Moreover, in the case at bar the plaintiff has alleged that the defendant is guilty of acts constituting unfair practice and competition, which, aside from the allegations with reference to the existence of the corporation for convenience, entitle him to recover if he proves his case.

█ The second point urged by the defendant, that the conveyance of the good will of the business of C. F. Sauer & Co., Inc., did not transfer the right to plaintiff to use the corporate name, is also without merit. Corpus Juris, vol. 28, p. 738, informs: "Good will, being always incident to some particular place, *name*, property, or business to which it inseparably adheres, can be sold, assigned, or otherwise transferred only in connection with the transfer of the thing to which it is incident." (Italics ours.)

The name of C. F. Sauer & Co., Inc., which had a certain established value as being a concern in the motorcycle business, certainly was and must be construed to be the chief thing of value in the transfer of its good will to the plaintiff. Of course, Sauer could not be prevented from using his own name, if he saw fit to again go into the motorcycle business, but the duty was imposed upon him not to use his name or the name of the corporation in such manner as to deprive plaintiff of any of the rights and privileges accorded to plaintiff by reason of the transfer of the good will of C. F. Sauer & Co., Inc.

It is further argued by the defendant that the provision in the contract, wherein C. F. Sauer & Co., Inc., agrees not to engage in the motorcycle business in the city of New Orleans as long as plaintiff is in such business, is void as being an unreasonable restraint of trade and against public policy.

█ This contention is undoubtedly sound, as there is no time limitation fixed in the agreement. It is too well settled to require the citation of authority that an agreement which provides that one party shall not engage in the same business for an unlimited period is null as being in restraint of trade and inimical to the public policy of this state. However, the cause of action here is not based upon this portion of the agreement, and, notwithstanding its inclusion in the contract, the defendant owed to the plaintiff the duty of not using the name of the corporation in such manner as to deprive the plaintiff of the good will which the plaintiff had in good faith purchased.

The district judge overruled the exception of no cause of action, and, we believe, correctly so.

█ This leads us to a consideration of the evidence in respect to the acts of Sauer which are claimed to be unfair and inapposite to his contractual undertaking.

We find that, although Sauer received the sum of $1,000 for the good will of the corporation, he actively remained in the motorcycle business under the name of C. F. Sauer & Co., Inc., after the execution of the agreement. In the telephone directory of the city of New Orleans of December, 1933, we find, on page 82 thereof, that Sauer advertised himself as being the agent of Harley-Davidson motorcycles at 627 St. Charles street, New Orleans, although, in truth and in fact, he was not the agent of these motorcycles; his agency contract having expired as of date July 1, 1933. He also knew that the plaintiff was the only lawful agent in the city of New Orleans for Harley-Davidson motorcycles.

We further find, in the same telephone book, on page 161 thereof, the name of "Sauer, C. F. & Co., Inc., Motorcycles, 627 St. Chas." The name "Sauer, C. F. & Co., Inc.," appears in boldface type. Thus, the conclusion is irresistible that, although Sauer had sold to the plaintiff the good will of his motorcycle business operated by him under the name of C. F. Sauer & Co., Inc., he thereafter persisted, by advertisements, to inform the public that the business was being conducted at the same address and under the same name.

We also note in the rear of the same telephone book, in the classified advertisements, under the heading "Motorcycles," that Sauer advertised as being in the motorcycle business under the name "Sauer, C. F. & Co.," in boldface type.

In the telephone directory of the city of New Orleans, June, 1934, issue, we note that Sauer, on page 170 thereof, advertises as follows: "Sauer, C. F. & Co., Motor-

cycles, 627 St. Chas." The words "Sauer, C. F. & Co." are in boldface type. In the rear of the directory in the classified advertisements, under the heading "Motorcycles," we find "Sauer, C. F. & Co., 627 St. Chas." In the telephone directory of December, 1934, we find that the defendant, on page 169 thereof, advertises as follows: "Sauer, C. F., Motorcycles, 627 St. Chas.," the words "Sauer, C. F." being in boldface type, and in the rear thereof, in the classified advertisements, under the heading "Motorcycles," we find the following: "Sauer, C. F., 627 St. Chas."

Considering these facts as a whole, it is obvious that although the defendant sold to the plaintiff the good will of his motorcycle business for the sum of $1,000, he at all times intended to deprive plaintiff of the enjoyment of that good will to which plaintiff was entitled. We can only judge the defendant by his actions, and it is clear that the plaintiff paid for something which was not received, due to the wrongdoing of the defendant. Sauer continued to inform the public that C. F. Sauer & Co., Inc., was actively engaged in the motorcycle business as agents for the Harley-Davidson Motorcycles at 627 St. Charles street, notwithstanding the fact that he had sold the good will of that business to the plaintiff.

It is said, in Cooley on Torts, vol. 2, p. 359, that: "To steal or to injure the good will of a business by any species of deception is a wrong which will be redressed by remedies appropriate to the circumstances."

The district judge found for the defendant. We are of the opinion that the judgment is manifestly erroneous in fact and in law. Whether we find for the plaintiff by virtue of the contract, or "Ex delicto," for damages resulting from the unfair practices of the defendant, is immaterial with reference to the quantum of damage. The good will of the business of C. F. Sauer & Co., Inc., was fixed by agreement of the parties to be worth the sum of $1,000. Plaintiff did not receive this good will, although he paid for it, but he cannot receive more than the value placed upon the same by the defendant and himself.

For the reasons assigned, it is ordered that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff, Harvey Lindstrom, and against the defendant, Charles F. Sauer, in the full sum of $1,000, with legal interest thereon from judicial demand until paid, and costs.

Reversed.