McCALEB, Justice.
Plaintiff, assignee of the Town of Ken-ner, sued to recover from defendants, Pope Park, Inc., Quick Realty Company, Inc., Taylor Land Company, Inc. and Irwin Land Company, Inc., the sum of $4000, representing damages sustained by the Town as a result of the failure of Pope Park, Inc., to perform certain obligations undertaken by it in a bond which it executed as principal in favor of the Town. From a judgment in favor of defendants, Quick Realty Company, Taylor Land Co. and Irwin Land Co., plaintiff has appealed.
Taylor Land Company, Inc. was incorporated in November, 1948 and has always been solely owned and controlled by John T. Charbonnet. Pope Park, Inc. was incorporated on November 4, 1949 with C. W. Pope listed in the charter as subscribing for 98, and William P. Irwin for 1, of its 100 shares of capital stock. The charter also names Pope and Irwin as directors and as President and Vice President of the company, respectively, but the terms of the charter give complete control over the corporation to the president and the owner of three-fourths of the outstanding stock, who appears to have been Pope. Irwin Land Company, Inc. was incorporated June 19, 1950 and has always been solely owned and controlled by William P. Irwin, although C. W. Pope was named as a director in the charter and subscribed for three out of the 300 shares of the capital stock of the company.
■On November 9, 1949 Taylor Land Company, Inc., with William P. Irwin, individually, purchased approximately 60 squares of undeveloped land in Highway Park Subdivision in the Town of Kenner for $50,070. On the same day, two of those squares were sold to Pope Park, Inc. for the sum of $34,700. However, only $200 cash was paid by Pope Park, the balance being represented by a demand note secured by a mortgage on the property. By means of sales executed on December 23, 1949, March 29, 1950 and July 6, 1950, Pope Park, Inc. purchased approximately thirteen and one-half more squares in Highway Park Subdivision from Taylor Land Company and William P, Irwin, at an aggregate price of $176,450, paying only $600 in cash and again giving demand notes secured by mortgages on the property for the balance owed.
C. W. Pope, d/b/a Pope Construction Company, proceeded to develop the property which Pope Park had purchased, by clearing and grading the land, putting in streets and sidewalks and building houses thereon. In furtherance of this development, Pope Park, Inc. persuaded the Town of Kenner to pass a resolution on July 20, 1950, which stated that the Town would accept for maintenance certain streets being built for Pope Park by Pope Construction Company if Pope Park would furnish a bond for $10,000 with the plaintiff, National Surety Corporation, and in favor of the Town, guaranteeing that Pope Park, Inc. would construct the streets in compliance with a certain ordinance.
Pope Park, Inc. accordingly furnished the bond and continued to develop the property until the Fall of 1950, when C. W. Pope (d/b/a Pope Construction Company) found that he could not meet his current obligations as they matured, and that his creditors were threatening to obtain liens on the property owned by Pope Park, Inc., in an effort to secure their claims. As a result, Quick Realty Co. was formed by Charbonnet and Irwin, the real mortgagees of Pope Park, Inc., for the specific purpose of taking over Pope Park’s land and improvements with all movables located thereon, and using that property to satisfy all of the development’s creditors. The charter of Quick Realty Co. indicates that William P. Irwin was a director, as well as the president and principal stockholder of the company (having subscribed to 98 out of 100 shares outstanding), but that C. W. Pope had no interest or control whatsoever in it.
*242 Quick Realty Co. was incorporated on November 2, 1950, and two days later Pope Park, Inc., by two acts of sale, transferred all of its assets to Quick. In one act of sale, Quick purchased all of the land which Pope Park had bought from William P. Irwin and Taylor Land Company (less whatever lots Pope Park had sold to others) by assuming Pope Park’s indebtedness on the promissory notes which had originally been given in payment for the land. In the other act of sale, Quick purchased all movable property located on the land, the consideration for this transfer being the payment of certain laborers and subcontractors who had done work in the Pope Park development.
Quick Realty Co. subsequently settled with most of the lien claimants and creditors of Pope Park, Inc., and Pope Construction Company, by giving some of the -property in payment and in some cases, it -gave property supplemented with cash. In addition, it undertook to complete and deliver some 20 houses which had been begun by Pope Park. Then, on June 26, 1951, ‘Quick sold the squares which it still owned -,to Taylor Land Company and Irwin Land ‘Company for $10,000, thus effecting a final ..disposition of all property it had acquired ifrom Pope Park, Inc.
'However, neither Pope Park nor Quick 'had ever constructed streets in compliance •with the former’s agreement with the Town -of .Kenner. The Town, therefore, put /Pope park in default on February 10, 1951, ■and, .on .October 1, 1951, it sued Pope 'Park, 'I-nc. and National Surety Company -for damages it sustained by reason of Pope 'Park’s breach. On August 6, 1954, National Surety Company settled the suit with -the Town of Kenner and was assigned all ■rights which the Town had against all the -defendants in the case at bar. Then, about .a year later, plaintiff filed this suit seeking reimbursement for the loss it incurred -due to the failure of Pope Park, Inc. to fulfill its -street construction obligations.
Plaintiff .contends that, as a result of ithe transfer,of .all of the property of Pope Park, Inc. to Quick Realty Co. and the subsequent transfer by Quick of what was tantamount to all of its remaining property to Taylor Land Co. and Irwin Land Co., the transferee corporations, being simply continuations or “reincarnations” of the transferor corporations, became liable for the debts of their respective transferors. Plaintiff does not contend that the conveyances were made to defraud its assignor, as one of Pope Park’s creditors, but claims it is entitled to recovery under certain language found in the cases of Walter v. Caffall, 192 La. 447, 188 So. 137 and Gomez v. Pope Park, Inc., La.App., 56 So.2d 229.
We do not find the cases cited by plaintiff to be in point. However, the doctrine urged by it finds recognition in the decision in Wolff v. Shreveport Gas, Electric Light & Power Co., 138 La. 743, 70 So. 789, 794, where the following pertinent observations are made:
“According to the consensus of judicial opinion in this country, a newly organized corporation is liable for the debts of an old one, to the business and property of which it has succeeded, where it is shown that the succession was the result of a transaction entered into in fraud of the creditors of the old corporation, or that the circumstances attending the creation of the new, and its succession to the business and property of the old, were of such a character as to warrant the finding that the new, is merely a continuation of the old, corporation. * * *
“ * * * In the case of a sale, in good faith, of the property and business of a strictly private corporation, duly authorized by its shareholders, to a third person, for an adequate consideration, the property would no doubt pass free of incumbrance, and the creditors would be relegated to the proceeds in the hands of the debtor corporation; but, where the purchaser is a new corporation, composed of the *243 same shareholders as the old, the transaction, in no manner, affects the rights of the creditors of the old corporation, who may proceed for the recovery of the amounts due them against either corporation, or both; and that, whether the claims be founded in contract or tort, since the real debtor, though represented by two corporations instead of one, remains the same, in contemplation of law. * * * ”
To the same effect see Alliance Trust Co. v. Streater, 182 La. 102, 161 So. 168.
Since plaintiff does not assert that the transactions between the various defendant companies were confected in fraud of the creditors of Pope Park, Inc., the only basis for holding any of the appellee corporations liable for the debts of Pope Park, Inc. is that they are continuations or reincarnations of that company.[1]
However, the “continuation” doctrine of the Wolff case can be invoked only when it is shown that the major stockholders of the selling corporation also have a substantial or almost identical interest in the purchasing corporation, for, otherwise, there would be no premise for concluding that the new corporation is a reincarnation of the old.
On this subject, Stevens on Corporations, 2nd Ed., 1949, Section 192, page 914, sets forth:
“Where the personnel of the debtor is not identical with the membership of the corporation which was subsequently formed and which took over the debtor’s assets, the creditor may have to rely on the theory of fraudulent conveyance.”
And 13 Am.Jur. “Corporations”, Section 1239, says:
“§ 1239. Identity of Corporations.—
“It is, of course, clear that where a purchase in good faith for a valuable consideration is made by one corporation of the property of another there is no liability (for the debts of the selling corporation) where the two corporations are entirely distinct so far as members or stockholders are concerned. It is not essential, however, to freedom from liability in such a purchase that the two corporations have no common members or stockholders. That there is no liability is true even though the purchasing corporation is organized by the stockholders or members of the vendor corporation, or by some of them, or by the bondholders of the old corporation. * * * ” (Words in parentheses supplied) .
See also 15 A.L.R. 1112, 1115 and cases therein cited.
In arguing that the appellee corporations are continuations of Pope Park, Inc., plaintiff’s counsel point to the following facts:
(1) All conveyances from Taylor Land Co. and William Irwin to Pope *244 Park, Inc. were on terms of credit, with only nominal cash payments being made by the transferee.
(2) Charbonnet made substantial loans to C. W. Pope in connection with the development.
(3) Taylor Land Co. and William Irwin granted to Pope Park, Inc. partial releases of the mortgages securing the purchase price of the land without exacting any payment therefor.
(4) The names of both Charbonnet and Irwin “prominently appear” in the charters of both Pope Park, Inc. and Quick Realty Co. and the two men are therein designated as agents for service of process.
(5) Pope’s certificate, representing his shares in Pope Park, Inc. was endorsed in blank by him immediately after issuance thereof and left with Charbonnet.
(6) Charbonnet admitted that he was an organizer of Quick Realty Company, Inc.
In absence of bad faith, it is difficult to perceive that the foregoing circumstances would render the transferee corporation liable for the obligations of Pope Park or that any of these facts, or a combination thereof in the light of all circumstances, establish that Quick Realty Co. or Taylor Land Co. or Irwin Land Co. were identical with Pope Park, Inc.
The best that could be said is that the fact that Pope left his endorsed stock certificate in Pope Park, Inc. with Charbon-net might, without explanation, indicate that Charbonnet was actually the major stockholder in Pope Park, Inc. Plowever, the evidence shows that neither Pope nor Charbonnet ever considered that Pope had divested himself of the actual ownership of the stock in leaving it with Charbonnet, who was Pope’s lawyer at that time. Charbonnet apparently never attempted to interfere with the running of Pope Park, Inc. or do any act as a stockholder therein, and, furthermore, Charbonnet eventually returned the stock certificate to Pope. It thus appears that Charbonnet was merely custodian of the certificate for Pope.
But, even if it is considered that Charbonnet’s possession of Pope’s endorsed stock certificate constituted Char-bonnet the owner of Pope Park, Inc. there is no evidence that he was also a stockholder in Quick Realty Co., the purchaser of Pope Park’s assets. The fact that Char-bonnet was an organizer of Quick Realty Co. is of no consequence in this respect, in the absence of charges and proof of fraud.
The judgment is affirmed.

. Defendants declare that the doctrine stated in Wolff v. Shreveport Gas, Electric Light & Power Co. could not apply to the case at bar because the Town of Kenner was not a “creditor” of Pope Park, Inc., at the time it transferred all of its assets to Quick Realty Go., since Pope Park at that time had only an obligation to perform its contract with the Town, and would not owe the Town a “debt” until put in default for failure to perform.
In view of the result we reach, it is not essential that we definitely decide this contention of defendants, although it is apparent that their counsel has failed to consider the definitions contained in Article 3556 of the Civil Code, Paragraphs (20) and (21) are pertinent here and read as follows: “20. Obligee or Creditor.- — Obligee or creditor is the person in favor of whom some obligation is contracted, whether such obligation be to pay a sum of money, or to do or not to do something. 21. Obligor or Debtor. —Obligor or debtor is the person who has engaged to perform some obligation.”