## HOME FINANCE SERVICE v. LINAM.
### No. 16589.

Court of Appeal of Louisiana. Orleans.

May 17, 1937.

Jos. A. Casey, of New Orleans, for Home Finance Service.

Baldwin, Haspel & Molony and Robt. R. Rainold, all of New Orleans, for White System of New Orleans, Inc.

Bentley G. Byrnes, of New Orleans, for A-1 Tire Company, Inc.

JANVIER, Judge.

Henry L. Heymann, now deceased and succeeded in this litigation by his widow as testamentary executrix, operating as Home Finance Service, was engaged in business in New Orleans in the making of small loans, for which business he had duly qualified under Act 7 of the Extraordinary Session of the Legislature of 1928. He made a loan to William P. Linam, Jr., engaged then in the automobile tire and service station business at 614 North Rampart street in this city. On Linam's default, Heymann, on June 8, 1935, obtained judgment against him in the sum of $231.55, with interest and attorney's fees. On June 15, 1935, Linam, together with his father and a third incorporator, organized a corporation styled "A-1 Tire Company, Inc." and, in the articles of incorporation, transferred to the corporation, in exchange for all of the capital stock, certain listed movable property, including one Ford truck,

which was valued at $550 and which was referred to as "subject to chattel mortgage." All, or most of this property, it is now contended, belonged to Linam, the judgment debtor. In the articles of incorporation it is not stated whether the $550 valuation of the Ford truck was the equity remaining over and above the amount of the chattel mortgage, or whether that was the gross value of the truck.

It was not shown what part of the articles were transferred by Linam, what part by his father, nor what part by the third incorporator. The new corporation continued to do business at the same location at which Linam had formerly conducted his business.

In April, 1936, under a writ of fieri facias issued in execution of the judgment against Linam, Jr., the Ford truck which had been transferred to the corporation was seized.

Thereupon the A-1 Tire Company, Inc., by intervention and third opposition, claimed to be the owner of the said truck and prayed for the release of the seizure and also for a reservation of its right to seek redress "ex delicto" for the alleged wrongful seizure.

Into the proceedings also came "White System of New Orleans, Inc.," another money-lending corporation, which claimed to be the holder of a note secured by chattel mortgage on the said truck—not the mortgage which had existed on the truck at the time of its transfer to the corporation—but a new one which, on February 11, 1936, long after the transfer, had been executed and duly recorded in the mortgage office prior to the issuance of the writ of fieri facias under which the truck had been seized by the judgment creditor.

The White System of New Orleans, Inc., asked that the truck be not sold unless for a price sufficient to pay the note held by it and secured by the said chattel mortgage.

The chattel mortgage held by the White System was executed not by the A-1 Tire Company, Inc., to which corporation the truck had been transferred by Linam, but by the said Linam, who had been the owner thereof prior to the transfer in the act of incorporation.

To the intervention and third opposition of the A-1 Tire Company, Inc., Mrs. Mary Lauel Heymann, testamentary executrix of the estate of Heymann—he having died—made answer to the effect that the truck, although transferred to the A-1 Tire Company, Inc., was still liable to seizure under the judgment against Linam, since it and the other property had been transferred for the purpose of placing it beyond the reach of Linam's creditors. Mrs. Heymann prayed that the said opposition be dismissed, that the said truck be thus subjected to the seizure under the writ of fieri facias, and that judgment for the amount of the debt be rendered against the tire company because of its having purchased all of the property of the said Linam.

In answer to the intervention of the White System, Inc., Mrs. Heymann prayed for a dismissal thereof, alleging that, at the time the mortgage held by it was executed, Linam, Jr., who had executed the mortgage, "was not the owner of the property described in the said chattel mortgage, but that said truck was on said date, Feb. 11, 1936, the property of the A-1 Tire Company, Inc." After this answer had been filed—in fact, on May 23, 1936—the White System, Inc., realizing that the mortgage had been executed by Linam, although the truck had previously been transferred by Linam to the company, obtained from the A-1 Tire Company a notarial act in which it acknowledged that, in executing the mortgage on February 11th, the said Linam had acted for and on its behalf as owner of the truck.

When the third oppositions came on for trial below, counsel for A-1 Tire Company, moving to strike out the prayer of the seizing creditor for judgment against the said company, argued that that demand was not incidental to the subject matter of the third opposition, which had as its object, the release from seizure of the automobile truck which was involved. He stated his motion to strike as follows: "I file a motion to strike out that portion of the answer where the duly qualified testamentary executrix takes the part of the plaintiff in reconvention insofar as same affects the A-1 Tire Company, Inc., any personal liability on the part of the A-1 Tire Company, Inc., for this reason. That under article § 375 of the Code of Practice of the State of Louisiana, it states: 'In order to entitle the defendant to institute a demand, in reconvention, it is required that such demand, although different from the main action, be, nevertheless, necessarily connected with and incidental to the same'."

The trial court sustained this motion. Thereupon the seizing creditor tendered

evidence which, it was contended, would show that the transfer had been made for the fraudulent purpose of placing the property beyond the reach of Linam's creditors. Objection to this evidence was made, first, on the ground that plaintiff, in his answers to the third oppositions, by referring to the "transfer" of the truck by Linam to the corporation, had estopped himself to contend that the said transaction was fraudulent and was not an actual "transfer"; second, on the ground that plaintiff's recourse should have been to the civil district court for a judgment setting aside the said "transfer"; and, third, that the doctrine which has been announced in several cases to which we shall later refer —that a creditor may look to the property of his debtor which has been transferred to a corporation for the purpose of defeating the rights of the creditor—is only applicable where the transfer is made for no other consideration than capital stock of the company.

These objections were sustained, the evidence was excluded, and judgment was rendered against Mrs. Heymann as the executrix of the estate of Heymann, recognizing the A-1 Tire Company, Inc., as the owner of the truck, and in favor of the White System of New Orleans, Inc., recognizing it as the holder of the mortgage on the truck, and reserving the right of the tire company to sue the seizing creditor for damages. Mrs. Heymann has appealed.

■ We first consider whether a direct, independent action should have been brought to set aside the transfer—whether the revocatory action should first have been resorted to. The courts of this state have scrupulously guarded the rights of creditors against just such schemes as that which appellant contends was concocted to deprive her of her rights. There are many cases involving similar situations. The latest on the subject is Alliance Trust Company v. Streater, 182 La. 102, 161 So. 168, 172. Others are W. F. Taylor Company v. Gulf Land & Lumber Company, 119 La. 426, 44 So. 187; Wolff v. Shreveport Gas, Elec. Light & Power Company, 138 La. 743, 70 So. 789, L.R.A.1916D, 1138; Price v. Florsheim, 174 La. 945, 142 So. 135; Superior Oil Company v. Baltar, 181 La. 908, 160 So. 626; Heard v. Monroe Sand & Gravel Company, 9 La.App. 568, 121 So. 642, and Wilson v. Lagasse, 12 La. App. 704, 127 So. 17. In the latest of these, the Alliance Trust Company Case, the ques-

tion of the right of the creditor to disregard the transfer was discussed and the Supreme Court said that, among the remedies available to the creditor in such situation, is the right "to obtain an order for the seizure of the property in the hands of the corporation as though no transfer had been made." That the statement above quoted was not inadvertently made is evident when we consider the fact that there was a vigorous dissent on the ground that the only remedy available to the creditor in such situation is the revocatory action. In the dissenting opinion appears the view that the creditor "has no right to hold the transferee of the property liable for his claim, even to the extent of the value of the property transferred, except by the method of annulling the transfer, under the provisions of the Code." Obviously the jurisprudence permits the judgment creditor to disregard such a transfer and does not require an independent revocatory action.

■ We next consider the contention that no evidence is admissible because the authorities which permit a seizing creditor to disregard such a transfer only apply to situations in which the property has been transferred in exchange for capital stock. Here it is contended that the automobile truck which was seized was not transferred in exchange for stock, but for a valuable consideration, to wit, the assumption by the corporation of the debt due on the truck. But this argument overlooks the fact that the transfer of all of the property including the truck was made in exchange for capital stock, so that, as a matter of fact, there was nothing actually given except the stock itself, and, though there may have been and was a debt due on the truck at the time of the transfer, the debt very obviously was insignificant when compared to the value of all of the property which was transferred. That property is appraised in the articles of incorporation at a figure approximating $10,000.

At any rate, since the pleadings plainly raise the question of fraud, it is obviously advisable that all the evidence touching on the subject be permitted to be introduced.

■ The contention that, since the answers to the third oppositions referred to the truck transaction as a "transfer," the seizing creditor, by those answers, is estopped to contend that the said transaction was fraudulent, does not impress us. That transaction was in truth a transfer

as to all persons not adversely affected by it. It was entirely valid and unassailable and even those adversely affected had no right to set it aside. Their right, if the transaction was fraudulent, was limited to the treating of the property transferred as being still subject to their debts. Therefore there was no reason why the transaction should be referred to as a transfer. Furthermore, in the same proceedings in which references were made to the transfer, the contention was made that the right of the creditor to proceed directly against the property transferred was not affected. We cannot see that an estoppel resulted.

▆ We next approach the contention that the claim for a judgment against the corporation may not be presented by reconventional demand in an answer to the third opposition. This contention is based on the theory that, since the third opposition, which is the main or principal demand, is concerned only with the question of ownership of the truck, whereas the claim for personal judgment is not based on the ownership of the truck, but on the alleged fraudulent transfer of it along with other movable property, the claim for personal judgment is not incidental to the main demand. But we think that article 398 of the Code of Practice, which gives to the seizing creditor the right, in answer to a third opposition, to allege and prove fraudulent the purported title of the third opponent, should be construed as permitting the seizing creditor in that same suit to claim whatever he may be entitled to claim if the alleged title of the third opponent is shown to be fraudulent. In the cases which we have cited—particularly in the Alliance Trust Company Case, supra —it is held that, where, in an effort to place property beyond the reach of creditors, it is fraudulently transferred to a corporation, the corporation becomes itself liable for the amount of the debt of the creditor "upon the ground that the corporation, the new entity, is the same as the old and by taking the title to the property under such circumstances is the assumer in law of the debts of the one making the transfer."

"Where individual engaged in lumber and millwork business organized corporation and transferred everything of value connected with his business to new corporation, such corporation held liable for debts of incorporator." Wilson v. Lagasse, 12 La.App. 704, 127 So. 17.

Thus, if the transaction was fraudulent and had as its object the placing beyond the reach of Linam's creditors of the movables transferred, then, under the rule laid down in those cases, the newly created corporation became liable for the debts. If so, and if it can be shown that the transfer was fraudulent, then there is no reason why the creditor should be relegated to another new and independent action to obtain that judgment. If there is liability, it has resulted from the fact that the transfer was fraudulent. Therefore, incidental to the suit in which it is sought to declare the transfer fraudulent is the claim for a personal judgment based on that transfer.

▆ The White System of New Orleans, Inc., was recognized as the holder of a valid chattel mortgage on the property in question. But its mortgage was executed by Linam individually, and, although it is now claimed that Linam acted for the corporation when he made the transfer, still, at the time of the seizure, the records show a mortgage by the individual, Linam, of property owned by the corporation, and we do not think that the act of correction should be given the effect of affecting adversely the rights of the seizing creditor which had attached at the time of the seizure.

Nor did the seizure under the judgment against Linam, on the ground that the transfer was fraudulent, have the effect of making the property Linam's except so far as the rights of the seizing creditor were concerned. This, we think, we have already shown. Therefore, when the creditor seized the property as though Linam had never transferred it, it had the right to do so under the doctrine followed in the cited decisions. Nevertheless, the White System of New Orleans, Inc., without right to complain that that transfer was fraudulent, should have treated the property as belonging to the transferee, the corporation, and since, at the time it perfected its mortgage from the said corporation, the rights of the seizing creditor had already attached, those rights became and now remain superior to the rights of the mortgage creditor. Of course, this question also depends upon whether the transfer was fraudulent, and, therefore, the entire matter must be remanded for trial upon that issue.

It is therefore ordered, adjudged, and decreed that the judgment appealed from

be and it is annulled, avoided, and reversed, and that the matter be and it is remanded to the First City Court of New Orleans for further proceedings consistent with the views herein expressed and according to law.

Reversed and remanded.

WESTERFIELD, J., absent, takes no part.